195 So.2d 461 (1967)
Mrs. Angelina BARRERE
v.
COMMERCIAL UNION INSURANCE GROUP and Mrs. Joseph M. Ajubita.
No. 2395.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1967.
Rehearing Denied March 6, 1967.
*462 Hattier, Schroeder & Kuntz, Herman M. Schroeder, New Orleans, for plaintiff-appellee.
Montgomery, Barnett, Brown & Read, Peter H. Beer, New Orleans, for defendants-appellants.
Before SAMUEL, HALL and BARNETTE, JJ.
SAMUEL, Judge.
Mrs. Angelina Barrere filed this suit for personal injuries and property damages sustained in an automobile accident which occurred in the City of New Orleans on July 13, 1965. Her car was stopped at an intersection in obedience to a stop sign when it was struck from behind by the defendant vehicle. Named defendants are the driver of the defendant vehicle and her liability insurer. A similar suit for personal injuries was filed for and on behalf of plaintiff's minor niece who had been a passenger in her aunt's car at the time of the same accident. The two suits were consolidated and tried to a jury which returned a verdict against the defendants herein in the amounts of $4,100 to the plaintiff in this suit and $250 for her niece. The verdict was made the judgment of the trial court.
Defendants have appealed only from the judgment in favor of Mrs. Barrere. They limit their appeal to the question of quantum and contend: (1) the trial court erred, and appellants were prejudiced thereby, in not permitting counsel for defendants to read to the jury appellate opinions adversely criticizing one of plaintiff's expert medical witnesses; and (2) the amount awarded is excessive.
The first contention is based on the fact that out of the presence of the jury, after the close of the evidence and prior to the commencement of argument, defense counsel informed the trial judge in chambers that in his closing argument to the jury he intended to refer to opinions of appellate courts which adversely criticized Dr. Blaise Salatich, the medical expert principally relied on by plaintiff. The opinions from which he intended to read included Snell v. Intercoastal Airways, Inc., La.App., 165 So. 2d 878, Norman v. Standard Supply & Hardware Co., La.App., 126 So.2d 776, Easterling v. J. A. Jones Construction Company, La.App., 115 So.2d 888, Smith v. W. Horace Williams Company, La.App., 84 So.2d 223, and Vogts v. Schwegmann, La. App., 56 So.2d 177. Counsel refrained from making any reference to those opinions because the trial judge instructed him not to do so.
We find, as appellants contend, that Dr. Salatich's testimony was of vital importance to plaintiff's case; without that testimony the jury (which voted 9 to 3 for the verdict of $4,100) would have had to *463 award substantially less. But we are of the opinion that the ruling which prevented a reading of portions of the opinions was correct.
Counsel argues he had a right to read "law" to the jury, particularly in view of the fact that the appellate opinions criticizing the doctor could be made known to the jury in no other manner and could have been read in argument to the court alone. But even if what counsel proposed to read to the jury was "law", as he contends, he would be unable to read them. Because such a practice would tend to confuse rather than aid the jury and because, in civil cases, questions of law are exclusively for the court and only questions of fact are for the jury, counsel may argue to the jury only such law as the court has ruled is applicable. Little v. Hughes, La.App., 136 So. 2d 448. And, contrary to counsel's contention, the portions of opinions which he intended to read to the jury form no part of the law; they are concerned only with the credibility of the witness in question. In argument to the jury such credibility cannot be attacked by the use of extracts from appellate opinions which have not been introduced in evidence and which the witness has had no opportunity to answer or explain. Had counsel questioned the witness concerning these opinions during the trial while he had the doctor on cross examination, a different question would have been presented for our determination. Generally, in argument to the jury counsel can comment on evidence introduced during the trial. However, we refrain from expressing any opinion concerning that question as the same is not before us.
Insofar as quantum is concerned the pertinent evidence contained in the record is the testimony of the plaintiff herself and the testimony of five medical experts: Dr. Servando C. Garcia, who limited his practice to obstetrics and gynecology but who, as was true in the case of Mrs. Barrere, occasionally did not so limit treatment rendered to his regular patients; Dr. Russell C. Grunsten, an orthopedic suregon; Dr. Homer E. Kirgis, a neurosurgeon; Dr. Blaise Salatich, who limited his practice to orthopedic surgery; and Dr. Joe V. Hopkins, Jr., a radiologist.
Plaintiff, a 43-year-old widow at the time of the accident, testified as follows: She was stunned by the impact and experienced a severe headache, which lasted throughout the day, and a "pulling and strong stiffness" on the right side of her neck. She made an appointment to see her physician, Dr. Garcia, on the following day, July 14. At that time her neck was giving her a great deal of trouble. She took the medicine prescribed by Dr. Garcial to relieve the pain but found it necessary to phone him later for a stronger prescription. Because of her financial inability to pay for additional visits, and despite the fact that she continued to suffer, she did not again see the doctor professionally for two and one-half months although she did speak to him on the phone during that period. In September her suffering became much worse and she experienced increased pain in the neck, head and right arm. She saw Dr. Garcia again on September 25 and on several occasions thereafter. He administered heat treatments which gave her some relief but she did not continue the treatments because of the cost and attempted to treat herself at home by the use of a heating pad, aspirins, etc. The defendant insurance company sent her to see Dr. Grunsten and her attorney sent her to Dr. Kirgis and later to Dr. Salatich. Dr. Salatich began treatment consisting of heat, ointment and muscle relaxants during April, 1965. At the time of the trial, approximately one and one-half years after the accident, she was still being treated by Dr. Salatich once a week and she continues to suffer pain and discomfort, particularly in the region of the neck. As long as she regularly takes the prescribed medicines and treatments the neck becomes relaxed and she is relieved of the pain; but if she discontinues the medicines and treatments the pain returns. Prior to the accident she had suffered *464 no such pain or discomfort nor had she had any trouble with her neck.
Dr. Garcia first saw plaintiff on July 14, 1964, the day following the accident, at which time she complained chiefly of neck pain. He performed a complete physical examination and ordered cervical x-rays. The examination revealed slight cervical muscular spasm with some limitation of motion. The x-rays were negative. Plaintiff was again seen by this doctor on September 25, October 1, 5, 7 and 9, 1964. She was administered micro-thermo treatment and given analgesics and anti-spasmodic therapy. Although she still had some residual neck pain at that time, she was discharged on October 9 because this doctor felt she was doing well. He also testified that the effect of this type of injury could lie dormant and then flare up at a later date.
Dr. Grunsten saw plaintiff on one occasion four months after the accident at the request of the defendant insurance company. He took plaintiff's history, performed a complete orthopedic examination and obtained x-rays. Plaintiff complained to him of stiffness of the shoulder, numbness of the upper extremity and sensation of pressure involving the occipital area. The x-rays were within normal limits and this doctor found the neck negative of symptoms.
Dr. Kirgis examined plaintiff on December 29, 1964 at which time she complained of slight discomfort with full flexion of the neck and head. This doctor took her history, had x-rays taken and performed a neurosurgical examination. There was no muscular spasm or other objective finding except a difference in grip which may be associated with this type of injury. He was of the opinion that she had sustained a mild strain of the cervical spinous muscles and ligaments, a soft tissue injury, and although her discomfort could recur, he expected her complaints would gradually disappear. He advised application of heat to the neck and continued use of aspirins as long as plaintiff experienced a significant degree of discomfort. He suggested to plaintiff that if the discomfort continued she should again get in touch with her physician. The doctor explained that in injuries of this kind patients do have good and bad days but in the usual course of the condition the symptoms subside and the patient experiences less discomfort.
Dr. Salatich saw plaintiff nine months after the accident on April 15, 1965 at the request of her attorney. He had x-rays taken by Dr. Joe V. Hopkins, Jr. and performed a complete orthopedic examination. In his opinion plaintiff had sustained a moderate cervical syndrome more outstanding on the right side. She had painful difficulty in attempting to move her neck in any direction, there was a loss of expected rate of flexion ability and a tightness of soft structures over the back and both sides of the neck. The amount of this muscle spasm was significant and more noticeable on the right side. He found no abnormality of reflex response but did find hyperaesthesia, i. e., a loss of expected skin sensation, over the right back and right side of the neck as compared to the opposite side. He reviewed the x-rays taken by Dr. Hopkins and found two abnormalities which he associated with the accident and which were a cause of plaintiff's difficulties. The first vertebra was out of alignment, slightly displaced to the left of the second vertebra, and there was an S-shaped curve of one vertebra which would have been straight in a normal patient. He prescribed relaxant medication, analgesics and counter irritants. Plaintiff received regular physiotherapy in the form of shortwave diathermy and has improved gradually although she had a marked recurrence on one occasion when she attempted to lift a small child. This doctor stated the effect of the injury might be quiescent and then recur, at times without apparent reason and more frequently when the patient attempts activity too strenuous for the condition. He was of the opinion that she needed further treatment.
*465 Dr. Joe V. Hopkins, Jr. reviewed the x-rays he had taken at Dr. Salatich's request. His findings and opinion of those x-rays, about which he testified graphically and in detail, coincided with the findings and opinion of Dr. Salatich regarding the same.
We hold no brief for Dr. Salatich. He has appeared as a witness in many cases coming before this court on appeal and we know from experience that he is quite likely to overemphasize and overstate the nature and extent of the plaintiff's injuries. But his testimony must be accepted when the same appears to be true and correct. We cannot say the jury in the instant case committed error in placing more reliance on his testimony than on that of some of the other medical experts, especially since all of the pertinent expert testimony is that the effect of the type of injury here involved may lie dormant for periods of time and then recur with or without an apparent reason and in view of the additional fact that a competent radiologist testified the x-rays taken by him confirmed the basic findings of Dr. Salatich.
The verdict and judgment are in the lump sum of $4,100, without itemization. The proven items of special damages total approximately $600 and we find $3,500, in round figures, was the amount awarded for plaintiff's injuries. We further find that this award is not excessive to the extent that it constitutes an abuse of the "much discretion" given to the jury by LSA-C.C. Art. 1934(3). Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Ballanga v. Hymel, 247 La. 934, 175 So.2d 274; Ourso v. Lumbermens Mutual Casualty Co., La.App., 189 So.2d 16; Davis v. Cooperative Cab Co., La.App., 176 So.2d 148; Ayres v. Great American Insurance Company, La.App., 163 So.2d 866.
The judgment appealed from is affirmed. Affirmed.