333 So.2d 701 (1976)
Inez JACKSON
v.
ED'S CAB COMPANY et al.
No. 7517.
Court of Appeal of Louisiana, Fourth Circuit.
June 9, 1976.
Rehearing Denied June 30, 1976.
Writ Refused October 1, 1976.
*702 Reed, Reed & Reed, Floyd J. Reed, New Orleans, for plaintiff-appellant.
Christovich & Kearney, Robert E. Peyton, Hammett, Leake & Hammett, Craig R. Nelson, New Orleans, for defendants-appellees.
Before STOULIG, SCHOTT and BEER, JJ.
BEER, Judge.
Defendant-appellees stipulated liability. The sole jury function performed in this case was the setting of the quantum of damages due plaintiff-appellant, Inez Jackson, as a result of alleged back injuries resulting from a motor vehicle accident. The jury awarded $3,500. The trial court rejected post trial efforts to increase the amount of the award, and this appeal resulted.
To a substantial extent, appellant's allegations of error center around the cross-examination of Mrs. Jackson's medical witness, Dr. Blaise Salatich. In addressing the principal issue complained of in connection with the examination of this controversial witness, able counsel for appellant challenges the validity of the trial court's ruling which permitted defense counsel's cross-examination of Salatich to include questions regarding previously published opinions of this and other appellate courts in which Salatich had participated as an expert witness. See Barrere v. Commercial Union Insurance Group, 195 So.2d 461 (La.App. 4th Cir., 1967).
In Barrere, this court determined that extracts from various published appellate opinions which had not been previously introduced in evidence did not properly form the basis for an attack on Salatich's credibility and could not be read to the jury in closing argument. However, that opinion went on to state:
"Had counsel questioned the witness (Dr. Salatich) concerning these opinions during the trial while he had the doctor on cross examination, a different question would have been presented for our determination. Generally, in argument to the jury counsel can comment on evidence introduced during the trial. However, we refrain from expressing any opinion concerning that question as the same is not before us."
Here, that question is before us, and we proceed to deal with it as follows:
Expert witnesses, upon qualification and designation as such, are, then and there, granted an important and far reaching franchise not enjoyed by their lay counterparts: they are privileged and encouraged to express opinions based upon their expertise.
To be thus empowered, expert witnesses may first be obliged to respond to interrogation questioning their expertise. This may properly include a well grounded attempt to demonstrate the existence of bias or partiality. It properly follows that if, over a period of time and by reason of a course of conduct, an individual who seeks qualification as an expert has become sufficiently conspicuous or controversial as to have been, himself, the subject matter of prior judicial pronouncements, then those pronouncements may, under appropriate circumstances, form a basis for cross-examination of that witness regarding his qualifications.
In Barrere, supra, the court also stated:
"We hold no brief for Dr. Salatich. He has appeared as a witness in many cases coming before this court on appeal and we know from experience that he is quite likely to overemphasize and overstate the nature and extent of the plaintiff's injuries."
*703 It is a matter of common judicial knowledge that a number of appellate opinions have dealt with the alleged qualifications (or lack thereof) of this witness. The existence of those decisions is well known to able trial counsel. Accordingly, when a litigant chooses, for whatever reason, to rely heavily upon the testimony of this doctor, that relying party may anticipate that prior judicial opinions regarding his objectivity and credibility may become material in an effort to qualify him as an expert witness. It was not error (nor should it have been a surprise to plaintiff's counsel) for the trial court to permit defense counsel to cross-examine Dr. Salatich about his repeated failures to obtain board certification. Equivocation by Salatich on this important point could, properly, set the stage for referral to prior judicial pronouncements relative thereto. Upon such confrontationwhile under cross-examinationSalatich clearly had the opportunity to either successfully explain away the challenge or not. The record compellingly demonstrates that such cross-examination was effective and meaningful not because it referred to previous opinions but because counsel's questions regarding such matters precipitated an opportunity for the jury to hear Salatich embark upon explanatory forays which demonstrated his credibility (or lack thereof) to them. In this way, the members of the jury became the principal benefactors of a distinctive function of the adversary proceeding, for the questions and answers gave them added insight to perform that most important jury functionthe determination of a witness' credibility and the extent of reliance to be placed thereupon.
Able counsel for appellant additionally contends that the court erred in allowing "unreasonably long, overbroad, repetitive, argumentative and frequently irrelevant cross-examination" of Dr. Salatich. However, a painstaking consideration of the record indicates that, in almost every instance, it was the response of Dr. Salatich that was long, overbroad, repetitive, argumentative and frequently irrelevanteven when attempting to answer reasonably simple questions that sought brief and direct responses. The fact that this witness' testimony was, at times, rambling, disjointed, irrelevant and immaterial was less attributable to defense counsel's questions than to the witness himself.
Able counsel for appellant also details a substantial number of complaints relative to the conduct of the trial, the method of defense counsel's examination of witnesses, the giving and refusing to give of various proposed jury charges and the lack of exercise of control by the trial court in allowing too much leeway in the closing argument of defense counsel. We find all of these contentions to be without merit and further find, upon a review of the record, that the verdict of the jury and the judgment of the district court is correct and that justice has been done. See Johnson v. Petit, 236 So.2d 304 (La.App. 4th Cir., 1970), and Shows v. Williamson, 256 So.2d 688 (La.App. 2nd Cir., 1972).
No useful purpose will be served in a detailed discussion of the injuries allegedly occasioned to the plaintiff. They are, to some extent, obscured by the expert medical testimony. It is sufficient to observe that neither her 79 visits to Dr. Salatich's office, nor her various baths, heat treatments, etc. caused the jury to feel that plaintiff's back had been seriously injured, entitling her to substantial recompense.
Appellant's final major complaint is to the effect that the trial judge committed grave, reversible error by permitting the trial to extend into the evening hours as an alternative to being completed on the following day. Yet, the record clearly indicates that late in the afternoon on the day in question, the trial judge put the matter to the jury who, themselves, expressed the wish to finish the trial that day. There is nothing whatsoever in the record to signal any failure on the jury's part as a result of this decision. For such *704 useful purpose as it may serve, we approve the procedure followed by the trial judge. While some problem might be created in an instance where a jury was required to work late into the evening on a number of successive trial days in a complicated and many faceted trial, it is certainly no abuse of the trial court's wide discretion to permit the jury to participate in making such a choice as was made hereparticularly under the circumstances existent in this reasonably simple, generally uncomplicated and not lengthy trial.
The judgment of the Civil District Court for the Parish of Orleans is affirmed, at appellant's cost.
AFFIRMED.