No. 82-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

SHANE STEVEN WHITE,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Nicholas C. Jacques argued, Helena, Montana

For Respondent:

Honorable Mike Greely, Attorney General, Helena, Montana
Sheri Sprigg argued, Assistant Attorney General, Helena,
Montana
Charles Graveley, County Attorney, Helena, Montana
Kevin Meek argued, Deputy County Attorney, Helena,
Montana

Submitted:    September 20, 1982

Decided:    February 18, 1983

Filed: FEB 18 1983

*Ethel M. Harrison*

———————————————— Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant appeals from his conviction of felony aggravated assault in the District Court, First Judicial District, Lewis and Clark County. The District Court imposed a sentence of 10 years with 7 years suspended and recommended that the Department of Institutions place the defendant in Swan River Youth Camp.

The case arose out of an altercation at a bar near Helena. The defendant (White) had been accompanied to the bar by his companions, Dan Phillips and Joe Harris. At the bar were Allen Pippin, the victim of the alleged aggravated assault, Keith Capps and Kent Liles. Pippin and Liles were playing pool with Phillips and Harris, the losers to buy beers. At the conclusion of their final game, won by Phillips and Harris, Pippin and Capps refused to pay off the bet. An argument ensued, Pippin and his companions left the bar and White's companions followed them out to the parking lot. White, observing them go out to the parking lot, picked up a pool cue stick, and followed them out.

The evidence is contradictory as to what followed. During the verbal argument which erupted in the parking lot, White walked 10 feet to Pippin so that the two were face to face. White testified as did Phillips, that Pippin "took a swing" at White, but missed. Three witnesses for the State denied that Pippin swung at the defendant. White struck Allen Pippin on the side of the head with the butt end of the pool cue. Pippin was knocked to the ground and eventually required hospitalization. While Pippin was being helped to his feet, White and his companions went to the bar, obtained their wraps and a beer, and left.

The State's case against White was based on alternative theories. First, the State argued that based upon their witnesses' testimony, White got into an argument with Pippin, and struck him with a pool cue, White being the aggressor. Its second theory was that even if Pippin did swing at the defendant, White acted unreasonably in the amount and extent of force that he used to repel Pippin's attack and therefore he was not entitled to a defense of self-defense.

White timely appealed his conviction. He raises two principal issues:

1. The District Court erred in permitting cross-examination of Phillips, a defense witness, about specific acts of misconduct allegedly committed by Phillips not related to the case at trial.

2. The District Court erred in giving its instruction no. 10 in words as follows:

> "You are instructed that if you find that the defendant was assaulted with fists, then you are instructed as follows:
>
> "An assault with the fists does not justify the person being assaulted in using a weapon in self-defense unless that person believes and a reasonable person in the same or similar circumstances would believe that the assault would likely inflict death or serious bodily harm to himself or to prevent the commission of a forcible felony."

IMPROPER CROSS-EXAMINATION OF A WITNESS FOR DEFENDANT

White, in his case-in-chief, called as a defense witness, Dan Phillips, one of his companions at the event in question. Phillips testified, as did White, that Pippin struck at White with an overhand fist which missed White and that White then lifted the cue stick and hit Pippin on the side of the head.

On cross-examination by the deputy county attorney, the following colloquy between witness, the court and counsel occurred:

"Q. You go to Cutone's quite frequently; isn't that true? A. I used to quite frequently, yes.

"Q. And isn't it true--Do you know Tom Cutone, the owner? A. I sure do.

"Q. And isn't it true that he told you he didn't want you at his bar?

"MR. JACQUES: Your Honor, I'm going to object to this. If there's going to be argument, I'd like to argue it outside the presence of the jury. It's improper impeachment.

"THE COURT: I think that's right. What's the point of that question? I think I'll sustain the objection.

"THE WITNESS: I am allowed in Cutone's now and have been.

"BY MR. MEEK:

"Q. What kind of drink did you buy the defendant and his girlfriend for a birthday drink? A. I believe a can of Rainier for Shane, and I think a glass of wine for Cindy, but I'm not sure.

"Q. Were you drinking beer out of a can? A. Yes, I was.

"Q. And what was Joe Harris drinking beer out of? A. Can of Rainier.

"THE COURT: I'll reverse that decision. You may inquire as to whether Mr. Cutone asked him to stay out of the bar.

"BY MR. MEEK:

"Q. Isn't it true, Mr. Phillips, that the owner of Cutone's instructed you that you were never to attend his bar prior to this incident? Isn't that true? A. A long time ago he 'eighty-sixed' me from the bar.

Q. And what does 'eighty-sixed' mean? A. Do not come back, but then I have talked to him, and he said, 'Maybe it's not your fault,' and I was allowed in there, and I still am.

"Q. Maybe what wasn't your fault? A. My girlfriend's brother beat me up in Cutone's,

4

broke five of my ribs, blacked both of my eyes, broke my nose, and since my girlfriend's sister was working there, he thought it probably was a good idea that I didn't show up.

"Q. Isn't it true that the reason that you were banned from Cutone's is because you constantly caused trouble there? A. No, that's not true."

At the time set for the beginning of trial, court, counsel and the defendant met, and the District Court made a ruling on defendant's motion in limine that "any bad acts or specific instances of conduct of the defendant or other witnesses not arising with the facts giving rise to the instant charge" be not questioned or referred to. The court granted the motion in limine at the outset of trial.

Notwithstanding the court's order in limine, the deputy county attorney asked the questions relating to specific instances of misconduct of the witness Phillips as we have set forth above. The deputy county attorney admitted during oral argument that he purposely asked the questions so as to later impeach the witness on his instances of misconduct through the owner of the bar. The State thereafter, in its rebuttal case, called the owner of the bar as a witness, who testified that Phillips had indeed been banned from the bar for "incidents which had occurred three weeks to a month before" the event which was the subject of the case at bar.

The District Court erred in permitting the interrogation of a witness, not a party to the suit, as to past instances of misconduct for the purpose of impeaching the witness. This issue is controlled by Rule 608, M.R.Evid., relating to evidence of the character and conduct of a witness. That section provides in pertinent part:

"(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the

5

> purposes of attacking or supporting his
> credibility, may not be proved by extrinsic
> evidence. They may, however, in the
> discretion of the court, if probative of
> truthfulness or untruthfulness, be inquired
> into on cross-examination of the witness (1)
> concerning his character for truthfulness or
> untruthfulness, or (2) concerning the
> character for truthfulness or untruthfulness
> of another witness as to which character the
> witness is being cross-examined has
> testified.. . ."

The testimony elicited by the State in this case against the witness Phillips, that he had been guilty of misconduct at bars, does not fit within the exception of Rule 608(b), quoted above that specific instances of conduct may be inquired into if probative of truthfulness or untruthfulness. As Professor Moore states with respect to the similar rule in the Federal Rules of Evidence:

> "The exception is narrowly drawn in
> recognition of the opportunities for abuse
> when evidence of specific instances of
> conduct is offered. Thus the rule admits
> such evidence only on cross-examination and
> only if probative as to a witness's
> truthfulness or untruthfulness . . ." 10
> Moore's Federal Practice ¶608.21, at VI-89
> (Oct. 1976).

The testimony as to Phillips' previous misconduct was wholly unrelated to the ability of Phillips to observe, recall or testify as to any relevant occurrences in the altercation between White and Pippin. It served only to create unfair prejudice against White, and confusion of the issues for the jury, and as such should have been barred under Rule 403, M.R.Evid.:

> "Although relevant, evidence may be excluded
> if its probative value is substantially
> outweighed by the danger of unfair
> prejudice, confusion of the issues, or
> misleading the jury,. . . waste of time
> . . ."

The result here as to this issue would be the same even before the adoption of the Montana Rules of Evidence. Former section

6

93-1901(11), R.C.M. 1947, used substantially the same language. Specific wrongful acts used in cross-examination of witnesses to degrade their characters were condemned in State v. Rogers (1904), 31 Mont. 1, 6, 77 P. 293; State v. Crowe (1909), 39 Mont. 174, 177, 102 P. 579; State v. Kanakarias (1917), 54 Mont. 180, 184, 169 P. 42; State v. Shannon (1933), 95 Mont. 280, 288, 26 P.2d 360. In State v. Rivers (1958), 133 Mont. 129, 320 P.2d 1004, this Court said:

> "States differ on the rule of proper impeachment. Montana's view is clear. Its violation is an invasion of a substantial right. Our applicable section is section 93-1901(11), R.C.M. 1947: 'A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty or integrity, is bad, but not by evidence of particular wrongful acts, except that it may be shown by examination of the witness, or the record of the judgment, that he has been convicted of a felony.' We cannot accept respondent's explanation that this was to test the credibility of the defendant on statements made, and not for their truth or veracity, or again that it was to show that defendant knew from the death of the child in Idaho that insufficient food would result in the child's death. And finally, respondent State and the lower court's view that even though this be error, it was waived by the defendant in her redirect. It was error. (citing cases)

> "Great damage had been done; a substantial right of the defendant had been invaded . . . ." (Emphasis added.) 133 Mont. at 134, 135, 320 P.2d at 1007.

WHETHER INSTRUCTION NO. TEN WAS PROPER

White's second issue relates to the giving of instruction no. 10, which instructed the jury on the issue of self-defense when a person is assaulted by another with fists.

The District Court had also instructed the jury in statutory language with respect to justifiable use of force by a person in the face of a threat or assault. For the convenience

7

of the reader, we set forth here the portion of court's instruction no. 9 which covered the statutory definition, and instruction no. 10 which was objected to by defendant:

"Instruction no. 9:

"A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or another or to prevent the commission of a forcible felony . . ."

"Instruction no. 10.

"You are instructed that if you find that the defendant was assaulted with fists then you are instructed as follows:

"An assault with the fists does not justify the person being assaulted in using a weapon in self-defense unless that person believes and a reasonable person under the same or similar circumstances would believe that the assault is likely to inflict death or serious bodily harm to himself or to prevent the commission of a forcible felony."

White's objections to court's instruction no. 10 were that it laid too much emphasis on fists, that self-defense had been adequately defined, and that it goes outside the statute on self-defense (section 45-3-102, MCA) if it states "you can never use a weapon to combat fists."

Court's instruction no. 9 sets forth in full the requisite elements to establish self-defense in a sufficient manner to guide the jury here. The giving of court's instruction no. 10 was repetitious, and may have placed undue emphasis on the requirements for self-defense. Inasmuch as this cause is being remanded for a new trial, we recommend that the repetitious instruction not be given in any future trial.

8

Reversed and remanded.

_____
Justice

We Concur:

_____

_____

_____
Justices

9

Mr. Justice Daniel J. Shea, concurring:

I join in the opinion but I want to stress two factors. It was highly prejudicial for the court to permit the prosecutor to attempt to impeach witness Phillips by asking him whether he and defendant had joined together in previous fights. Whether intended or not, the undeniable effect of the question and any answer elicited was to cause the jury to disbelieve witness Phillips that Alan Pippin was the aggressor. Because of this prejudicial line of questioning the jury may well have believed that defendant was the aggressor and it therefore may not have considered his claim of self defense based on his contention that Allen Pippin was the first aggressor.

Second, I stress that jury instruction no. 10 should not be given in place of instruction no. 9 in the retrial of this case. In holding the instructions to be merely repetitive, the majority opinion may leave the impression that it may be proper to use either instruction no. 9 or instruction no. 10, but not both. While the instructions are repetitive, instruction 10 unduly emphasizes the effect of using a weapon in a case of self defense where the evidence is that the other person used only his fists. Instruction no. 9 is the proper instruction to be used in the retrial of this case.

_____
                    Justice

I join in the separate concurring opinion of Justice Shea.

_____
                    Justice

10