No. 97-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 262

CHARLES FREDERICK UNMACK

and LINDA J. UNMACK,

Plaintiffs and Appellants,

v.

DEACONESS MEDICAL CENTER, BILLINGS CLINIC, B.R., P.C.,

YELLOWSTONE EMERGENCY PHYSICIANS, a general partnership,

MICHAEL BUSH, M.D., RICH COLE, M.D., BARBARA CURRY, M.D.,

RICK LAMB, M.D., R. JAMES MAJXNER, M.D., JEAN ELLIS, M.D.,

JAMES R. HARRIS, M.D., J.D.W., M.D., JOHN DOES I-V as employees

and agents of Deaconess Medical Center, and JOHN DOES VI-X

as employees and agents of Billings Clinic,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

James P. O'Brien; O'Brien Law Office, Missoula, Montana

Mark E. Westveer; Westveer Law Office, Missoula, Montana

For Respondents:

John J. Russell; Brown, Gerbase, Cebull, Fulton, Harmon & Ross,

Billings, Montana

Submitted on Briefs: July 16, 1998

Decided: November 5, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Plaintiffs, Charles and Linda Unmack (the Unmacks), appeal from the jury verdict and judgment of the Thirteenth Judicial District Court, Yellowstone County, dismissing their action with prejudice.**

**¶2. We reverse and remand for a new trial.**

**¶3. In determining whether the District Court erred, we consider the following issues:**

**¶4. 1. Whether the District Court abused its discretion in admitting character evidence for purposes of impeachment concerning a disciplinary action taken against the Unmacks' medical expert, Dr. Blaylock, for his conduct as a lawyer.**

**¶5. 2. Whether the District Court showed bias toward the Unmacks.**

Standard of Review

**¶6. The standard of review for evidentiary rulings is whether a district court abused its discretion in admitting evidence. Seizure of $23,691.00 in U.S. Currency (1995), 273 Mont. 474, 905 P.2d 148.**

## Factual and Procedural Background

**¶7. In December, 1995 the Unmacks brought a medical malpractice action against Defendants (Deaconess Medical Center). In their trial brief, Deaconess Medical Center requested that the District Court rule on the admissibility of evidence (the attorney character evidence) that a trial panel of the Oregon State Bar Association (the Oregon trial panel) took disciplinary action against an expert witness for the Unmacks, Dr. Paul Blaylock (Dr. Blaylock), for his conduct as a lawyer in soliciting clients for his law practice. Dr. Blaylock is a physician as well as a licensed attorney in Oregon. At an in-chambers hearing, the Unmacks objected that the attorney character evidence was not relevant, that it was extremely prejudicial, and that Rule 608, M.R.Evid., barred its admission. The District Court found that an expert witness has a special status, that the disciplinary proceeding was relevant to whether "the jury can accept [Dr. Blaylock's] expertise in any area." The District Court concluded that the proceeding went to "the obligations of attorneys in this day and age to bring to the Court experts that are honest," and ruled that "it is important that [the jury] be informed" that disciplinary action was taken against Dr. Blaylock. The Unmacks called Dr. Blaylock as an expert witness during the trial. On cross-examination, Deaconess Medical Center questioned Dr. Blaylock regarding the disciplinary action taken by the Oregon trial panel, and the District Court admitted the decision of the Oregon trial panel into evidence. In May, 1997 the jury returned a verdict in favor of Deaconess Medical Center.**

## Discussion

**¶8. 1. Whether the District Court abused its discretion in admitting character evidence for purposes of impeachment concerning a disciplinary action taken against the Unmacks' medical expert, Dr. Blaylock, for his conduct as a lawyer.**

**¶9. The Unmacks argue that the District Court erred in admitting character evidence that was unrelated to Dr. Blaylock's credibility as an expert witness. The Unmacks contend that Dr. Blaylock's status as a practicing attorney was not relevant to the credibility of his medical opinions. They argue further that the attorney character evidence was extremely prejudicial because of the low esteem in which the public holds lawyers, and they contend that Deaconess Medical Center exploited the low repute of lawyers to collaterally attack Dr. Blaylock. Finally, the Unmacks argue that**

**Deaconess Medical Center's impeachment of Dr. Blaylock was improper because the attorney character evidence had no bearing on his truthfulness or untruthfulness.**

**¶10. Deaconess Medical Center responds that the District Court did not err in admitting the attorney character evidence, because the attorney character evidence was probative of Dr. Blaylock's truthfulness. Deaconess Medical Center also argues that the District Court had discretion under Rule 608, M.R.Evid., to admit evidence of the character and conduct of a witness. Deaconess Medical Center argues in the alternative that even if the District Court erred, the error did not affect any substantial right of the Unmacks under Rule 61, M.R.Civ.P. Deaconess Medical Center contends that Dr. Blaylock was not deprived of an opportunity to give his expert opinions and that any error by the District Court was therefore harmless.**

**¶11. Rule 608 provides in pertinent part:**

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, *if probative of truthfulness or untruthfulness*, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness.

Rule 608, M.R.Evid. (emphasis added).

**¶12. We conclude that neither the fact that a disciplinary action was taken against Dr. Blaylock for his conduct as a lawyer nor the specific findings of the Oregon trial panel were probative of Dr. Blaylock's truthfulness or untruthfulness. Dr. Blaylock was charged with having improperly initiated contact with prospective clients in order to obtain professional employment as a lawyer. The Oregon trial panel considered whether Dr. Blaylock's "mental state was one of intent, knowledge, negligence or an isolated instance of negligence," and concluded that Dr. Blaylock's mental state "was one of neglect. . . . The record amply demonstrates that [Dr. Blaylock] has never previously or subsequently engaged in an improper initiation of contact with a potential client." The Oregon trial panel found that Dr. Blaylock had initiated contact with a prospective client "for the purpose of obtaining professional employment in violation of DR 2-104(A)." The Oregon trial panel concluded:**

We find numerous mitigating factors here primarily: (a) the absence of any prior disciplinary record . . . . There was no dishonest or selfish motive; (b) the accused here sought to render assistance to one whom he believed had requested that he contact them. The accused enjoys an otherwise impeccable reputation and is of outstanding character.

The finding of the Oregon trial panel that Dr. Blaylock acted negligently as a lawyer on one occasion has no relevance to his credibility as an expert medical witness.

**¶13. This Court has previously considered whether prior misconduct by a witness is admissible for purposes of impeachment under Rule 608(b), M.R.Evid. In State v. White, the district court admitted character evidence to impeach a defense witness on cross-examination. State v. White (1983), 202 Mont. 491, 658 P.2d 1111. Seeking to impeach a defense witness who had testified to what he saw of a fight outside a bar, the prosecution inquired whether the witness had ever been ejected from the bar. The Court in *White* held that the admissibility of the character evidence was controlled by Rule 608(b), M.R.Evid. *White*, 202 Mont. at 495, 658 P.2d at 1113. The *White* Court concluded that**

testimony as to Phillips' previous misconduct was wholly unrelated to the ability of Phillips to observe, recall or testify as to any relevant occurrences in the altercation between White and Pippin. It served only to create unfair prejudice against White, and confusion of the issues for the jury, and as such should have been barred under Rule 403, M.R.Evid.

*White, 202 Mont. at 496, 658 P.2d at 1113. The Court in White held that the district court erred in admitting "the interrogation of a witness, not a party to the suit, as to past instances of misconduct for the purpose of impeaching the witness." White, 202 Mont. at 495, 658 P.2d at 1113.*

**¶14. In the present case, we hold that the District Court abused its discretion in admitting the attorney character evidence. Rule 608, M.R.Evid., allows the admission of specific instances of conduct that bear upon a witness' credibility, provided that they are probative of truthfulness or untruthfulness. Because the attorney character evidence was not probative of Dr. Blaylock's truthfulness as an expert witness, its admission was improper under Rule 608, M.R.Evid. Because the attorney character evidence was not relevant to Dr. Blaylock's credibility as a medical expert witness, its**

admission was also improper under Rule 402, M.R.Evid., which provides that "[e]vidence which is not relevant is not admissible." Finally, because the attorney character evidence was highly prejudicial and confusing, it should have been barred under Rule 403, M.R.Evid. Rule 403, M.R.Evid., provides in pertinent part that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

¶15. Deaconess Medical Center relies unpersuasively on two decisions in contending that the District Court did not abuse its discretion in admitting the attorney character evidence. In Navarro de Cosme v. Hospital Pavia, plaintiffs appealed a district court's decision to allow the defendant to cross-examine an expert witness about the suspension of his license as a notary, his having been a defendant in three medical malpractice cases, and his testimony in another case that he had submitted an inflated invoice for his fees as an expert witness. Navarro de Cosme v. Hospital Pavia (1st Cir. 1991), 922 F.2d 926. The court in *Navarro de Cosme* concluded that a district court has "wide discretion under Rule 608(b)" in admitting specific instances of conduct to attack a witness' credibility and that "it is clear that the matters under inquiry on the cross-examination of Dr. Hernandez Cibes all pertained to his credibility as a witness." *Navarro de Cosme*, 922 F.2d at 933. Deaconess Medical Center argues that the evidence in *Navarro de Cosme* that the witness' notary license was suspended is similar to the attorney character evidence in the present case and that the District Court was therefore correct in admitting the attorney character evidence. The *Navarro de Cosme* court simply noted that the witness was cross-examined about "the suspension of his license as a notary for failure to submit the required reports." *Navarro de Cosme*, 922 F.2d at 932. The *Navarro de Cosme* court did not explain, however, why or for what purpose the reports were required. Thus, it is unclear how the *Navarro de Cosme* court determined that the suspension of the witness' notary license related to his credibility as an expert witness. The *Navarro de Cosme* decision consequently sheds no light upon the issues in the present case.

¶16. Deaconess Medical Center also relies on Jackson v. Ed's Cab Company. Jackson v. Ed's Cab Company (La. Ct. App. 1976), 333 So.2d 701. In *Jackson*, the court affirmed a district court's admission of extracts from prior appellate opinions that considered an expert witness' qualifications. *Jackson*, 333 So.2d at 703. The *Jackson* court concluded that "prior judicial pronouncements [concerning an expert witness may] . . . form a basis for cross-examination of that witness regarding his qualifications." *Jackson*, 333 So.2d at 702. In *Jackson*, the prior judicial opinions

were offered regarding the witness' credibility and expertise as an expert witness. In the present case, however, the attorney character evidence concerned Dr. Blaylock not as an expert medical witness but as a lawyer, and Deaconess Medical Center's reliance on *Jackson* is accordingly misplaced.

¶17. Finally, we hold that the District Court's admission of the attorney character evidence was not harmless error and that it affected the substantial rights of the Unmacks. Rule 61 provides in pertinent part:

**Harmless error.** No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Rule 61, M.R.Civ.P. In Zeke's Distributing v. Brown-Forman (1989), 239 Mont. 272, 278, 779 P.2d 908, 912, this Court held that "[f]or error to be the basis for a new trial, it must be so significant as to materially affect the substantial rights of the complaining party." The Unmacks contend, and Deaconess Medical Center does not dispute, that Dr. Blaylock was the only witness whom the Unmacks offered regarding the standard of care used by Deaconess Medical Center. Dr. Blaylock was an important witness for the Unmacks. There was a great danger that the jury would confuse the attorney character evidence with Dr. Blaylock's credibility as an expert medical witness. The attorney character evidence lacked probative value: it was irrelevant, clearly prejudicial, and potentially misleading. We conclude that the District Court's error was so significant that it materially affected the substantial right of the Unmacks to a fair trial and that the error was not harmless.

¶18. 2. Whether the District Court showed bias toward the Unmacks.

¶19. The Unmacks contend that the District Court displayed bias toward them that resulted in prejudice. The Unmacks argue for example that the District Court, in asking questions of a witness for Deaconess Medical Center, unduly emphasized that the witness was born and raised in Billings, Montana, and that the District Court harshly treated the Unmack's expert witness, Dr. Blaylock. Deaconess Medical Center responds that the Unmacks failed to preserve the issue for review. We agree. An objection raised on appeal for the first time is not timely. *See* Scofield v. Estate of Wood (1984), 211 Mont. 59, 63, 683 P.2d 1300, 1302. The Unmacks acknowledge that

they did not preserve this issue for appellate review but argue that this Court should consider bias under the "plain error standard." In State ex rel. Ins. Fund v. Berg, this Court concluded that "[*u]nder very limited circumstances*, the plain error doctrine permits review of errors not objected to at trial which result in substantial injustice by denying a party a fair trial." State ex rel. Ins. Fund v. Berg (1996), 279 Mont. 161, 173, 927 P.2d 975, 982 (emphasis added) (citation omitted). We conclude that exercise of the plain error doctrine is not justified in the present case. Thus, because the Unmacks did not preserve this issue for review, we do not address whether the District Court showed bias towards the Unmacks.

¶20. Reversed and remanded for a new trial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER