No. 99-330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 330

297 Mont. 368

992 P.2d 834

---

JEFF M. SMITH, JR.,

Petitioner and Appellant,

v.

COUNTY OF MISSOULA and

MISSOULA COUNTY SHERIFF'S OFFICE,

Respondents and Respondents.

---

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Samuel M. Warren, St. Peter & Warren, P.C.; Missoula, Montana

For Respondents:

Michael Sehestedt, Missoula Deputy County Attorney;

Missoula, Montana

---

Submitted on Briefs: September 30, 1999

Decided: December 23, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶ The Petitioner, Jeff Smith, Jr., applied to the District Court for the Fourth Judicial District in Missoula County for a writ of mandate to compel the Missoula County Sheriff to issue to him a concealed weapon permit, and also appealed the sheriff's decision to deny his application for a concealed weapon permit. The District Court denied his application for a writ of mandate, and following a hearing, the District Court denied his appeal. Smith appeals both decisions of the District Court. We affirm the judgment of the District Court.

2. ¶ The following issues are presented for review:

3. ¶ 1. Did the District Court abuse its discretion when it admitted evidence from Smith's criminal file after the County failed to respond to Smith's combined discovery requests?

4. ¶ 2. Did the District Court abuse its discretion when it admitted evidence from Smith's criminal file which was confidential criminal justice information?

5. ¶ 3. Did the District Court err when it concluded that the sheriff had no legal duty to issue Smith a concealed weapons permit?

6. ¶ 4. Did the District Court err when it denied Smith's application for a writ of

mandate?

## FACTUAL BACKGROUND

7. ¶ In October 1995, Jeff Smith, Jr. applied for a concealed weapon permit. The Missoula County Sheriff denied Smith's application by letter dated April 29, 1996. The letter stated:

Dear Mr. Smith:

We will not be issuing you a concealed weapon permit. During our background investigation it appears:

1. You failed to list your entire criminal history.

2. There is a City Police Department report regarding an incident in June of 1993 *[At the hearing the District Court determined that "June of 1993" was a typographical error, and should have been "November of 1993."]* in which a number of actions by you created fear of bodily harm to several victims. This caused city and county officers, and a deputy county attorney considerable concern about the suitability of the issuance of a concealed weapons permit.

After consulting with the Missoula County Attorney, I believe a concealed weapon permit should not be issued. You, of course, may elect to appeal this to a District Court Judge.

(Emphasis added.) Smith then submitted another application on April 23, 1997. Receiving no response, Smith filed an application for a writ of mandate in the District Court on August 20, 1997. The sheriff again denied Smith's application by letter dated August 21, 1997, which stated:

Dear Mr. Smith:

First, I owe you an apology for our failure to complete your application for a concealed weapons permit in a timely manner.

After conferring with County Attorney Dusty Deschamps I am going to continue my denial of issuance of a permit. You of course are aware that you have the right to

appeal my decision through the District Courts.

The District Court denied Smith's application for a writ of mandate on October 30, 1997.

8. ¶ On March 19, 1998, Smith filed an amended complaint in District Court, in which he asked the District Court to grant his application for a concealed weapon permit. On July 30, 1998, Smith served the County with combined discovery requests, which included the following:

REQUEST FOR ADMISSION NO. 3: Please admit that your letter of August 21, 1997 . . . completely and accurately states the basis for your denial of his April 23, 1997, application.

. . . .

REQUEST FOR ADMISSION NO. 5: Please admit that you fully and completely stated the reasons for your denial of Petitioner's previous application in "Exhibit "C" [which was the sheriff's letter of April 29, 1996].

The County did not respond. A hearing was held in the District Court on February 23, 1999. At the hearing, the County moved for the admission of evidence from Smith's criminal file. Smith objected to the evidence. He argued that because the State failed to answer his discovery requests, no evidence of his criminal history was admissible.

9. ¶ Smith's criminal file contained evidence that Smith was involved in an incident in November 1993; and that, as a result of the incident, Smith was charged with a number of felonies, to which he pled guilty and received a deferred imposition of sentence. After he satisfied the conditions of his deferred sentence, the District Court dismissed the State's charges against him.

10. ¶ On April 15, 1999, the District Court filed its findings of fact and conclusions of law. The District Court found that the sheriff denied Smith's applications because Smith posed a threat to the peace and good order of the community; that he was involved in a violent incident in 1993, for which he pled guilty to a number of crimes; and that Smith's first application failed to disclose other criminal history. The District Court denied Smith's application for a permit to carry a concealed

weapon.

## STANDARD OF REVIEW

11. ¶ We review a district court's findings of fact to determine whether they are clearly erroneous. *See Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (*citing Columbia Grain Int'l v. Cereck* (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). We review a District Court's evidentiary rulings to determine whether there has been an abuse of discretion. *Unmack v . Deaconess Med. Ctr.*, 1998 MT 262, ¶ 6, 291 Mont. 280, ¶ 6, 967 P.2d 783, ¶ 6.

12. ISSUE 1¶ Did the District Court abuse its discretion when it admitted evidence from Smith's criminal file after the County failed to respond to Smith's combined discovery requests?

13. ¶ Smith contends that the District Court abused its discretion when it admitted his criminal file as evidence. He argues that, during discovery, he asked the County to admit that the basis for the sheriff's denial of his applications was exclusively found in the sheriff's two letters, and that because the County failed to respond and his requests were deemed admitted, the County was precluded from introducing evidence from his criminal file at the hearing. However, we conclude that introduction of the file was not inconsistent with the sheriff's letters.

14. ¶ The sheriff's letter stated a number of reasons Smith's application for a concealed weapon permit was denied, including: a police report of an incident from 1993, and Smith's failure to list his entire criminal history. The evidence relating to Smith's criminal file from 1993 was not admitted as an additional reason for the sheriff's denial of his application, rather it was introduced as evidence of Smith's conduct in 1993 and to establish Smith's criminal history, both of which were reasons given by the sheriff for denial of Smith's application.

15. ¶ Smith also contends that because the County failed to answer his interrogatories, the County was precluded from using the information sought by the interrogatories at trial. Specifically, Smith points to Interrogatory No. 8, which asks:

To the extent that the reasons for the denial of Petitioner's Applications are not fully set forth in [the sheriff's two letters of denial], please state each and every fact, allegation or reasons upon which you relied in denying said Application dated April 23, 1997.

Smith argues that because the County failed to answer this interrogatory, the District

Court improperly admitted evidence from Smith's criminal file. However, there were remedies other than exclusion of the evidence for the County's omissions.

16. ¶ A party must respond to an interrogatory either by answer or objection. Rule 33 (a), M.R.Civ.P. If a party fails to respond to an interrogatory, the opposing party may move for an order pursuant to Rule 37(a), M.R.Civ.P., to compel discovery. A party may also move for discovery sanctions. *See* Rule 37(d), M.R.Civ.P. The district court, however, can only order discovery sanctions upon a motion. Rule 37 (d), M.R.Civ.P., provides:

If a party . . . [fails] (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, . . . the court in which the action is pending *on motion* may make such orders in regard to the failure as are just.

Rule 37(d), M.R.Civ.P. (emphasis added).

17. ¶ In this case, Smith did not move to compel an answer, nor did he move for discovery sanctions pursuant to Rule 37(d), M.R.Civ.P. Neither is this a situation where evidence was offered which was inconsistent with information provided in the sheriff's letters. We conclude that the District Court did not abuse its discretion when it admitted evidence from Smith's criminal file despite the County's failure to respond to Smith's combined discovery requests.

## ISSUE 2

18. ¶ Did the District Court abuse its discretion when it admitted evidence from Smith's criminal file which was confidential criminal justice information?

19. ¶ The legislature enacted § 45-8-321, MCA, to permit qualified individuals to carry a concealed weapon. Section 45-8-321(2), MCA, grants the sheriff discretion to deny an application for a concealed weapon permit when the sheriff has reasonable cause to believe the applicant has a mental disability or illness; or the applicant may be a threat to the peace and good order of the community.

20. ¶ Smith contends that the sheriff improperly relied on evidence from his criminal file to establish reasonable cause to deny his application for a concealed weapons permit, because the District Court dismissed the charges against him and ordered his records expunged. Smith suggests that once the District Court ordered his records expunged, those records could not be used for any purpose.

21. ¶ Section 46-18-204, MCA, however, does not provide for expungement; rather, it provides:

> After the charge is dismissed, all records and data relating to the charge are confidential criminal justice information, as defined in 44-5-103, and public access to the information may only be obtained by district court order upon good cause shown.

> Criminal justice agencies, such as the sheriff's office, can receive confidential criminal justice information. Section 44-5-303(1), MCA, provides in part:

> [D]issemination of confidential criminal justice information is restricted to *criminal justice agencies*, to those authorized by law to receive it, and to those authorized to receive it by a district court upon a written finding that the demands of individual privacy do not clearly exceed the merits of public disclosure.

> (Emphasis added.)

22. ¶ In this case, after Smith satisfied the conditions of his deferred sentence and the State's charges against him were dismissed, his criminal file became confidential criminal justice information, which the sheriff was authorized to receive. If the sheriff was entitled to receive it, he was entitled to consider it when exercising the discretion granted by § 45-8-321(2), MCA. We conclude that the District Court did not abuse its discretion when it admitted evidence from Smith's criminal file to explain the sheriff's denial even though it was confidential criminal justice information.

## ISSUE 3

23. ¶ Did the District Court err when it concluded that the sheriff had no legal duty to issue Smith a concealed weapon permit?

24. ¶ Montana permits qualified individuals to lawfully carry concealed weapons in places not legally prohibited. *See* §§ 45-8-321 through -330, MCA. To carry a concealed weapon, an individual must apply with the county sheriff for a permit. *See* § 45-8-321, MCA. The sheriff will issue a permit when the applicant qualifies pursuant to § 45-8-321, MCA, which provides in part:

(1) A county sheriff shall, within 60 days after the filing of an application, issue a permit to carry a concealed weapon to the applicant. The permit is valid for 4 years from the date of issuance. An applicant must be a United States citizen who is 18 years of age or older and who holds a valid Montana driver's license or other form of identification issued by the state that has a picture of the person identified. An applicant must have been a resident of the state for at least 6 months. Except as provided in subsection (2), this privilege may not be denied an applicant unless the applicant:

. . . .

(2) The sheriff may deny an applicant a permit to carry a concealed weapon if the sheriff has reasonable cause to believe that the applicant is mentally ill, mentally defective, or mentally disabled or otherwise may be a threat to the peace and good order of the community to the extent that the applicant should not be allowed to carry a concealed weapon. At the time an application is denied, the sheriff shall, unless the applicant is the subject of an active criminal investigation, give the applicant a written statement of the reasonable cause upon which the denial is based.

25. ¶ The District Court found that Smith was qualified pursuant to § 45-8-321(1), MCA, but affirmed the sheriff's conclusion that he was disqualified pursuant to § 45-8-321(2), MCA, because he was a threat to the peace and good order of the community. Smith contends that since he was qualified under § 45-8-321(1), the sheriff had 60 days–from the day on which Smith submitted his application–to exercise his discretion pursuant to § 45-8-321(2), MCA; otherwise, he is entitled to a concealed weapon permit as a matter of law. However, we conclude that Smith's contention is inconsistent with the plain language of § 45-8-321, MCA. Subparagraph (1) requires that a permit be issued within 60 days to anyone who qualifies "except as provided in subsection (2) . . . ." Subsection (2) describes the circumstances in which the sheriff may deny a permit, but it provides no time period within which the denial must issue. When we apply statutory law our duty is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

26. ¶ In this case, the District Court found that Smith first applied for a concealed weapon permit in October 1995; that the sheriff denied his application on April 29, 1996; that Smith reapplied on April 23, 1997; and that Smith was again denied on

August 21, 1997. Since § 45-8-321(2), MCA does not specify a time within which a denial must issue, we conclude that the District Court did not err when it held that the sheriff had no legal duty to issue Smith a concealed weapons permit for failure to deny his application within 60 days.

## ISSUE 4

27. ¶ Did the District Court err when it denied Smith's application for a writ of mandate?

28. ¶ Whether to grant or deny a writ of mandate is a legal conclusion that we will review to determine if it is correct. *Becky v. Butte_Silver Bow Sch. Dist. No. 1* (1995), 274 Mont. 131, 135, 906 P.2d 193, 195. A two_part standard must be satisfied for the issuance of a writ of mandate. *Becky*, 274 Mont. at 135, 906 P.2d at 195. The writ is available where the party who applies for it is entitled to the performance of a clear legal duty by the party against whom the writ is sought. If there is a clear legal duty, the district court must grant a writ of mandate if there is no speedy and adequate remedy available in the ordinary course of law. Section 27_26_102, MCA. For a court to grant a writ of mandate, the clear legal duty must involve a ministerial act, not a discretionary act. *Withers v. County of Beaverhead* (1985), 218 Mont. 447, 450, 710 P.2d 1339, 1341. "Where the person has a specific right and the public officer is acting ministerially and has no discretion in the matter, mandamus will lie." *State v. Cooney* (1936), 102 Mont. 521, 529, 59 P.2d 48, 53. In determining whether an act is ministerial or discretionary we have said:

[W]here the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.

*Cooney*, 102 Mont. at 529, 59 P.2d at 53.

29. ¶ With respect to the first element, legal duty, Smith contends the District Court should have granted his application for a writ of mandate because the sheriff had a legal duty to issue him a concealed weapon permit. He relies on *Phillips v. Livingston* (1994), 268 Mont. 156, 885 P.2d 528. In *Phillips*, the City of Livingston suspended a fireman because he was suspected of stealing money and equipment. We reversed the district court's denial of the fireman's application for a writ of

mandate. We stated:

[T]here is no question that a clear legal duty exists. Under § 7_33_4124, MCA, the Livingston city council is directed to conduct a termination hearing at its next meeting following a firefighter's suspension. Since they failed to do so, the relief specifically provided by § 7_33_4124(2), MCA, is Phillips' reinstatement to his former position.

*Phillips*, 268 Mont. at 162, 885 P.2d at 532.

30. ¶ This case is distinguishable from *Phillips.* Section 45-8-321(2), MCA, vests the sheriff with discretion to deny an application for a concealed weapon permit based on good cause. The statute at issue in *Phillips* permitted no discretion; it mandated that the city hold a hearing, and provided a specific remedy for failure to do so. Here, the sheriff exercised his discretion to deny Smith's application for good cause. The sheriff had no legal duty to issue Smith a concealed weapons permit.

31. ¶ Therefore, we conclude that the District Court did not err when it denied Smith's application for a writ of mandate or mandamus.

32. ¶ The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ KARLA M. GRAY

Justice W. William Leaphart, dissenting.

33. ¶ I dissent on issues three and four. The Court concludes that the statutory mandate of § 45-8-321(1), MCA, that a permit to carry a concealed weapon "shall" be issued within 60 days of the application, is qualified by the discretionary authority to deny the permit under subsection (2), which has no time constraints. The practical effect of the Court's ruling is to eliminate the 60-day mandatory requirement altogether. In light of this interpretation, a sheriff can take as long as he chooses to either issue or deny an application.

34. ¶ I seriously question the wisdom of a statutory scheme which requires that, if an application to carry a concealed weapon is not acted upon within 60 days, it must issue. That, however, is what the legislature provided in passing § 45-8-321, MCA. Under subsection (2), the sheriff clearly has the discretion to deny a permit if he determines that the applicant may pose a threat to the peace and good order of the community. Reading all parts of the statute as a whole, pursuant to Winchell v. DNR, 1999 MT 11, ¶ 20, 293 Mont. 89, ¶ 20, 972 P.2d 1132, ¶ 20, the sheriff's discretion to deny must, however, be exercised within the 60-day period allotted in subsection (1). The Court purports to honor the rule that our duty is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Contrary to its protestations, the Court has, in reality, "omit[ted] what has been inserted," in other words, the requirement that the sheriff act on the application within the 60-day period.

35. ¶ I would reverse and hold that since the sheriff failed to act on the application within the 60-day period, he had a clear legal duty to issue the permit and that the District Court should have issued a writ of mandamus.

/S/ W. WILLIAM LEAPHART