No. 00-112

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 133

JERRY LOPEZ and MONTE and

CAROLINE MONROE,

Plaintiffs/Respondents,

v.

WAYNE JOSEPHSON,

Defendant/Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Scott B. Spencer, Libby, Montana

For Respondents:

Matthew J. Sisler, Missoula, Montana

Submitted on Briefs: February 22, 2001
Decided: July 26, 2001

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Jerry Lopez and Monte and Caroline Monroe brought suit against Wayne Josephson in the Nineteenth Judicial District Court, Lincoln County, alleging assault. The jury awarded Lopez $45,000 and the Monroes $61,500 in compensatory damages. The jury also assessed $175,000 in punitive damages against Josephson. Josephson now appeals. We reverse.

¶2 Josephson raises several issues on appeal, which we restate as follows:

¶3 1. Whether the District Court erred when it allowed plaintiffs to introduce evidence of acts not referred to in the pretrial order?

¶4 2. Whether the District Court erred when it allowed plaintiffs to introduce evidence of bad character in its case-in-chief and on rebuttal?

¶5 3. Whether it was error to allow evidence of other wrongs or acts without giving prior notice.

¶6 4. Whether it was error to prohibit Josephson from questioning Lopez about his federal conviction as an alternative reason for moving to Florida?

¶7 5. Whether plaintiffs' counsel committed reversible error by repeatedly asking objectionable questions and by attempting to put inadmissible evidence before the jury?

¶8 6. Whether the District Court committed reversible error when it did not grant Josephson's motion for directed verdict against the Monroes?

## FACTUAL BACKGROUND

¶9 The parties to this matter were neighbors residing near Rexford, Montana. At some point after Josephson moved into the neighborhood, a dispute arose over Josephson's use of a septic system located on the Monroes' property. As a result of this dispute, relations between the parties deteriorated.

¶10 Caroline Monroe testified that Josephson would come out of his house and stare at her whenever she was outside. Monroes claimed Josephson would shout profanity and threats at them, and that he brandished a pistol and fired shots in the night. The Monroes testified that on at least one occasion, they were certain that bullets fired by Josephson passed right over their house.

¶11 Josephson's relationship with Lopez appears to have been no better than his relationship with the Monroes. Lopez testified that Josephson would call him and his sons racial names and would threaten them. Lopez applied for and was awarded a restraining order against Josephson. According to Lopez, at some point after the restraining order was issued, Josephson pointed a pistol at him as he drove past Josephson on the outskirts of Eureka.

¶12 The plaintiffs claimed that Josephson essentially terrorized Lopez's family and the Monroes, making their lives stressful and miserable. Although no one was physically injured as a result of Josephson's behavior, Caroline Monroe testified that she still has nightmares and panic attacks when she sees a vehicle similar to Josephson's. In addition, both Lopez and the Monroes ultimately fled their property because, they testified, they felt unsafe with Josephson in the neighborhood.

¶13 Josephson denied that he had engaged in the threatening or assaultive behavior described by Lopez and the Monroes. The jury, however, disagreed, and on October 27, 1999, the jury returned a verdict awarding Lopez $45,000 and the Monroes $61,500. The jury also determined that punitive damages were appropriate, and after a punitive damage mini-trial, assessed $175,000 in punitive damages against Josephson. After the jury returned its verdict, Josephson filed a motion and a subsequent amended motion for new trial under Rule 59, M.R.Civ.P., which the District Court denied. This appeal follows.

## STANDARD OF REVIEW

¶14 We review a district court's ruling on evidentiary issues for an abuse of discretion. *Simmons Oil Corp. v. Wells Fargo Bank*, 1998 MT 129, ¶ 17, 289 Mont. 119, ¶ 17, 960

P.2d 291, ¶ 17. A district court has broad discretion to determine whether evidence is relevant and admissible. *Simmons Oil*, ¶ 19. The question is not whether this Court would have reached the same decision, but, whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Simmons Oil*, ¶ 17.

¶15 We review a district court's denial of a Rule 50(b), M.R.Civ.P., motion for judgment as a matter of law to determine whether substantial evidence supports the jury's verdict. *Smith v. General Mills, Inc.*, 1998 MT 280, ¶ 17, 291 Mont. 426, ¶ 17, 968 P.2d 723, ¶ 17. Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion. *Smith*, ¶ 17. We view the evidence in the light most favorable to the prevailing party when reviewing a jury verdict. *Smith*, ¶ 17.

¶16 We review a district court's denial of a Rule 59, M.R.Civ.P., motion for a new trial on the grounds enumerated in § 25-11-102, MCA, for an abuse of discretion. *Armstrong v. Gondeiro*, 2000 MT 326, ¶ 17, 303 Mont. 37, ¶ 17, 15 P.3d 386, ¶ 17. The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion. *Armstrong*, ¶ 17. The standard requires that the abuse of discretion be so significant as to materially affect the substantial rights of the complaining party. *Simmons Oil*, ¶ 18.

## ISSUE 1

¶17 **Whether the District Court erred when it allowed plaintiffs to introduce evidence of acts not referred to in the pretrial order?**

¶18 Josephson argues that the District Court erred by allowing into evidence acts and instances of assault not alleged in the pretrial order. The purpose of a pretrial order is to simplify the issues, permit the parties to prepare for trial, and to prevent unfair surprise. *Schmeiding v .Schmeiding*, 2000 MT 237, ¶ 38, 301 Mont. 336, ¶ 38, 9 P.3d 52, ¶ 38. The operative contentions pertaining to assault in the pretrial order were as follows:

> a. Wayne Josephson assaulted Jerry Lopez and violated a court order by assaulting Jerry Lopez, when Josephson pointed a hand-held firearm at Jerry Lopez's face.

> . . . .

> e. Wayne Josephson is liable to the Monroes for assault, because Josephson verbally

caused the Monroes immediate fear of bodily harm or injury, and because Josephson shot firearms towards the plaintiffs' property.

¶19 The District Court found that it was impossible to determine from these allegations the date(s) and time(s) upon which the alleged assaults took place, where the alleged assaults took place, or, with the exception of the alleged pistol pointing and firing shots over the Monroes' house, exactly what acts Josephson allegedly committed to assault Lopez and the Monroes. However, the District Court concluded that the pretrial order placed Josephson on notice that he was being accused of assaulting Lopez and the Monroes on multiple occasions over an unspecified period of time.

¶20 In its Order Denying Defendant's Amended Motion for New Trial, the District Court analyzed the arguments of both counsel on the question of whether the court erred in allowing the plaintiffs to introduce evidence of acts not specified in the pretrial order. The court found that the somewhat vague pretrial allegations were "a perfect example of a problem caused by Plaintiffs' sloppy pleading and magnified by Defendant's failure to pin the Plaintiffs down through pretrial motions or discovery." The District Court stated:

> The rules of civil procedure give attorneys various tools to insure that there are no surprises at trial. If the Complaint does not contain "a short and plain statement of the claim showing that the plaintiff is entitled to relief," as required by Rule 8(a), a defendant may file a motion to dismiss under Rule 12(b), a motion for more definite statement under Rule 12(e), or a motion to strike under Rule 12(f). Rules 26-36 provide various types of discovery which may be employed to elicit as much information as possible about a claim or defense. If a party fails to provide complete answers in response to discovery, Rule 37 authorizes sanctions against the nondisclosing party. None of these tools was used by Josephson in connection with the assault claims against him . . . . Although not a model of clarity by any means, the Amended Complaint and the Pretrial Order placed Josephson on notice that he was being accused to [sic] assaulting Lopez and the Monroes on multiple occasions over an unspecified period of time.

¶21 The District Court was in the best position to evaluate the nature and extent of notice given Josephson, as the court was involved in the pretrial and trial proceedings, and observed first-hand the relative knowledge and preparation for trial of both counsel. We agree with the District Court that Josephson should not be allowed to neglect his duty to

utilize the rules of civil procedure to clarify the claims against him. Instead of using the discovery process to ascertain the extent of the plaintiffs' claims, he waited until the day of trial before making any attempt to clarify which assaults formed the basis of the case against him. Under these circumstances, we cannot find that the District Court abused its discretion in giving the plaintiffs latitude in their proof of the various assaults at trial. The District Court is affirmed on this issue.

## ISSUE 2

¶22 **Whether the District Court erred when it allowed plaintiffs to introduce evidence of bad character in its case-in-chief and on rebuttal?**

¶23 Josephson argues that numerous instances of bad character were introduced into evidence over his objection, and that none of this evidence was relevant to the alleged assaults, citing numerous examples. However, when his examples are placed in context of the whole record from trial, it is clear that this evidence was relevant.

¶24 Most of the challenged material was actually evidence of the assaults themselves. Because we ruled under Issue 1 that admission of evidence of the multiple assaults was not an abuse of discretion, Josephson's objection to "other assault" evidence as bad character evidence is moot. In addition, other of the challenged evidence of bad character was legitimately offered as impeachment evidence. For example, when Josephson denied that he ever threatened or cursed at the Monroes or Lopez, they were entitled to impeach his testimony through the testimony of Lopez's son, who testified about Josephson's threats and cursing. In short, without addressing every claim of the defendant with respect to bad character evidence, we cannot conclude that the District Court abused its discretion. The District Court is affirmed under this issue.

## ISSUE 3

¶25 **Whether it was error to allow evidence of other wrongs or acts without giving prior notice?**

¶26 Josephson also argues it was error to allow evidence of prior bad acts without giving him prior notice. Josephson was granted a motion in limine before trial to keep out prior bad acts, but that order pertained only to bad acts involving <u>other</u> parties, not the plaintiffs. The evidence of multiple assaults on the plaintiffs was properly admitted, as we ruled

above.

¶27 The plaintiffs initially wanted to introduce evidence about alleged assaults upon Lela Holder's daughter, other family members, and others who may have been victims of criminal conduct perpetrated by Josephson. The District Court properly granted Josephson's motion in limine relating to this evidence. The court's Order in Limine excluded "prior acts or crimes allegedly committed by Defendant on other occasions, at other places, involving other people." The District Court was not aware until trial, due to the inartful framing of the issues, that Josephson not only wanted to exclude evidence of assaultive behavior directed toward other individuals, but also wanted to exclude all but one incident of assault on the plaintiffs.

¶28 As referenced above, we agree with the District Court that the "prior bad acts" of which Josephson complained in his post-trial motion were not inadmissible prior acts, but were, rather, acts that were the proper subject of the plaintiffs' claim. The District Court properly precluded evidence of assaults by the defendant on non-party persons. The District Court is therefore affirmed under this issue.

## ISSUE 4

¶29 **Whether it was error to prohibit Josephson from questioning Lopez about his federal conviction as an alternative reason for moving to Florida?**

¶30 Josephson argues that he should have been allowed to question Lopez about his federal criminal conviction. He sought to show that Lopez really sold his house in Montana to pay the attorney fees occasioned by criminal charges against him, not because he wanted to flee the situation with Josephson.

¶31 Prior to excluding the line of questions Josephson sought to pursue, the District Court conducted an inquiry by questioning Lopez about any connection between the sale of his home and the attorney fees Lopez owed following his criminal trial. Lopez told the District Court that he sold his house for the amount owed on the loan, so there was no money in any event to pay the attorney fees he owed arising out of the criminal case. Based upon this uncontroverted information, the court appropriately determined that the potential prejudice stemming from the testimony outweighed its probative value. Rule 403, M.R.Evid. We find no abuse of discretion.

# ISSUE 5

¶32 **Whether plaintiffs' counsel committed reversible error by repeatedly asking objectionable questions and by attempting to put inadmissible evidence before the jury?**

¶33 Josephson argues that plaintiffs' counsel put inadmissible matters before the jury by repeatedly asking objectionable questions and raising impermissible inferences. Our review of the record compels us to agree. Although the District Court, in understandable frustration, repeatedly admonished plaintiffs' counsel not to bolster with inadmissible evidence, not to attempt to introduce inadmissible hearsay, and not to ignore the court's rulings on certain issues, plaintiffs' counsel blithely proceeded to do what he knew he should not.

¶34 The District Court, in its Order denying defendant's amended motion for a new trial, stated:

> As for other claims by Josephson of misconduct by Plaintiffs' counsel and failure of the Court to protect Josephson from unfair tactics by Plaintiffs' counsel, the Court did its best to keep out what should have been kept out and let in what should have been let in. The Court does not agree with Defendant that evidence got before the jury that should not have seen the light of day. The Court does agree, however, that inferences were created by Plaintiffs' counsel that should not have been created. When that happened, the Court cautioned the jury that it should base its verdict solely upon the evidence that was properly admitted. The Court did this on several occasions, and the Court believes the jury heeded those admonitions.

While the District Court did a yeoman's job in cautioning the jury, our review of the record leads us to conclude that the misconduct of plaintiffs' counsel was so pervasive so as to compel reversal.

¶35 The repeated asking of questions clearly intended to keep the assumption of damaging facts which cannot be proven before the jury, in order to impress upon their minds the probability of the existence of the assumed facts upon which the questions are based, constitutes gross misconduct. *State v. Eklund* (1994), 264 Mont. 420, 430, 872 P.2d 323, 329. A new trial may be granted if this misconduct was so pervasive that it prevented one of the parties from having a fair trial. Section 25-11-102, MCA, provides the grounds for a

new trial:

> The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> (1) irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.
>
> . . .

The trial court has an overriding duty to prevent a miscarriage of justice by granting a new trial where the misconduct of counsel prevents the opposing litigant from having a fair trial on the merits. *Durden v. Hydro Flame Corp.*, 1998 MT 47, ¶ 36, 288 Mont. 1, ¶ 36, 955 P.2d 160, ¶ 36. As we noted in *Putro v. Baker* (1966), 147 Mont. 139, 410 P.2d 717:

The guiding principle of our legal system is fairness. We must tenaciously adhere to the ideal that both sides of a lawsuit be guaranteed a fair trial. Sec. 27, Art. III, Montana Constitution [now Sec. 17, Art. II].

*Putro, 147 Mont. at 147-48, 410 P.2d at 722.*

¶36 There are multiple instances of misconduct of which defendant complained. The record also reveals other objectionable conduct not specified by the defendants. Unless one reads the transcript from beginning to end, it is difficult to grasp just how ubiquitous and egregious the conduct of plaintiffs' counsel was. We set forth below several specific instances of impropriety, and warnings followed by further misconduct. However, these are only the examples that lend themselves to discrete analysis. Only a complete transcript review can establish the actual extent of counsel's misconduct.

¶37 Josephson references plaintiffs' counsel's attempt to introduce the contents of a restraining order during his cross-examination of the defendant. That line of questioning was as follows:

> Q. Allegations have been made against you in a court of law and you didn't show up to. . .

A. Well the reason being it's a restraining order I'm to stay away from him, I didn't have any cause to even get near the man, so I was going to stay away from him anyway. There was no reason to show up.

Q. We move for Plaintiff's admission of Exhibit No. 1, Your Honor.

MR. SPENCER: Lack of relevance.

THE COURT: So the document is not admitted.

Q. What were the specific allegations against you-take a look. . .

A. Did you want me to read. . .

MR. SPENCER: Objection. Relevance.

THE COURT: Sustained. I don't know if the purpose is just to rehash what we've already heard sworn testimony about, but I think that it is unnecessary, and it's cumulative, and I will sustain the objection.

Q. The allegations were the same exact ones that we talked about today with the Lopezes, right?

A. Correct.

MR. SPENCER: Objection. Never mind. Too late.

TR. 203-204.

¶38 Josephson also points to plaintiffs' counsel asking two questions about the contents of a tape recording that the court had already ruled inadmissible:

Q. Thank you. Mr. Josephson, did you make statements in the Eureka area that Mr. Lopez was talking Cuban bullshit in the area?

A. That's . . .

MR. SPENCER: Objection, relevance.

THE COURT: Sustained.

Q. Mr. Josephson, did you state to people that you wanted to kick Lopez's ass?

MR. SPENCER: Objection, relevance, Your Honor, and could we have a side bar?

THE COURT: Sustained. Yes, we may.

TR. 243.

¶39 Plaintiffs' counsel's attempted to introduce a notarized statement through the defendant Josephson:

Q. I'm handing you a notarized statement of Mr. Hand. May I approach, Your Honor?

THE COURT: You may, but what good is a notarized statement?

Q. Mr. Hand is deceased, Your Honor. This falls outside of the definition of hearsay, it's notarized, it's a statement about Mr. Josephson and the Monroes. I'm going to ask him if he knows about it and if he's heard of it before.

THE COURT: Okay. I don't know how far you're going to get but you may approach. This is kind of like an evidence exam for me. If somebody would tell about these things a little before then I wouldn't have to, you know, make these rulings off the cuff, but go ahead. I mean we've got 89,000 exceptions to the hearsay rule and, you know, if somebody would give me a heads up and say we've got a dead guy who has a statement here that I'm going to try to get into evidence that I could do a little research, but I don't know if you are trying to let all these people think I'm an idiot or something, but proceed and I'll try to catch up as we go along.

Q. Not at all. In explanation, Your Honor, we hadn't anticipated needing to use the statement. . .

MR. SPENCER: Your Honor, this is an argument in front of the jury that's not appropriate.

THE COURT: That's right. Go ahead.

Q. Ever heard those statements from Mr. Hand before?

A. Never.

Q. Do you believe those statements to be true?

A. No I don't.

MR. SPENCER: Your Honor, I'm going to object, this is not relevant.

THE COURT: Sustained. You're trying to - - you're trying to get the jury to draw inferences from something that when the final question is asked I'm going to deny the offer of the evidence, so sustained.

Q. Thank you, Your Honor. I'm actually laying foundation for further questions at another time. May I approach?

THE COURT: You may. I've told the jury before that I don't want you to draw inferences from questions or things that are not admitted into evidence.

TR. 244-245.

¶40 Not satisfied with the court's decision denying the offer of the notarized statement, counsel tried once a gain to get the contents of the statement before the jury, this time through the defendant. Waving the statement around in his hand, he asked:

Q. Mr. Lopez, did you know Bernard Hand?

A. Yes sir.

Q. Did you know that he made a notarized statement before he passed away?

MR. SPENCER: Your Honor, I'm going to object. This is hearsay, and you can't do this.

THE COURT: Sustained. You're waving this thing around to give the jury the impression that there is something really damaging against Mr. Josephson even though you know I'm not going to let it in. Sustained.

[Mr. Sisler]: I believe it's an exception to the hearsay rule, Your Honor, because it's a declarant who is deceased and it's a notarized statement of Mr. Hand. The jury has not heard what is contained in the letter, however. . .

THE COURT: But they can - - they probably have a clue that you think it's good for your case or you wouldn't be waving it around. Was this made in belief of an impending death?

Q. The Monroes would be able to answer that, Your Honor.

THE COURT: Well, I'll sustain. Next question please.

TR. 261.

¶41 Josephson also refers us to plaintiffs' counsel's attempt to introduce information contained in police reports that were not admitted into evidence. Counsel asked Lopez to examine the reports, and asked the following questions:

Q. Were those reports, do they accurately depict some of the complaints you made back during 1995 and 1996 against Mr. Josephson?

MR. SPENCER: Your Honor, this is hearsay. This is bolstering and it's not impeachment.

THE COURT: Sustained. Sustained. The idea of rebuttal isn't to just get the last word in, it's to impeach, or to rebut something the other side has said. Now did Mr. Josephson say there were only six reports, or there were twenty reports, and you're trying to establish that there were seven instead?

MR. SISLER: He said he couldn't recall, Your Honor, and he couldn't recall a lot of things, and that's why Mr. Lopez is clarifying for the jury exactly what had happened.

THE COURT: He's not clarifying much so far, and if you are intending that you are going to offer these reports I'm going to deny them, but. . .

MR. SISLER: I understand that, however, in offer of proof I'd like to ask if we could have the records clerk from the Lincoln County Sheriff's Office come up and certify that they are accurate depictions of what's contained in the official files.

MR. SPENCER: That statement is of the officer, that's the person who has to testify. This is hearsay, it's not relevant.

THE COURT: I'm going to sustain the objection. It doesn't - - unless Mr. Lopez has had a car wreck and is now brain damaged and can't tell us what he told the officers back then, then this is not relevant. He's already told us how he, you know, what he thinks his version of the events is under oath. There is no dispute. He and the Monroes made some complaints to the Sheriff's Office, that's not in dispute, and they've told us what they complained about.

TR. 262-263.

¶42 Josephson also directs our attention to an instance when the District Court sustained an objection to playing a tape recording as merely bolstering. This exchange occurred between plaintiffs' counsel and his client Jerry Lopez:

Q. Mr. Lopez, there was a lot of talk about exactly what had happened during the time your vehicle was alongside Mr. Josephson's vehicle here. And earlier you had testified that you went straight down to the Sheriff's Department to make a recorded statement about what had happened on that day in October of 1996, do you recall that?

A. Yes sir.

Q. Is that copy contained in this recorder?

A. That is the report that Brad McGuinn took that day.

Q. And it contains your voice about exactly what happened?

A. Yes sir.

Q. And your concerns?

A. Yes sir.

Q. Your Honor, I would like to request permission to play this tape.

MR. SPENCER: And I object, that's not relevant.

THE COURT: Is it consistent with what you've testified to?

A. When you say consistent. . .

THE COURT: Does it say any differences?

A. Yes, except for the fact that since it happened so long ago I wasn't clear what vehicle he was driving. On the tape I was - - I described the vehicle he was driving that day. Wayne always switched vehicles. . .

THE COURT: Okay.

A. So I didn't. . .

THE COURT: I don't think it matters who was driving what model of vehicle. I'm going to sustain the objection, I don't think that it's relevant. I think it's just bolstering testimony we have already heard out of the witnesses mouth under oath here in Court.

TR. 258-259.

¶43 An example of counsel's refusal to heed the court's order sustaining an objection is found at TR. 84-85, when counsel was questioning his own client, Caroline Monroe:

Q. You're not able to put a price tag on the emotional aspect of it, are you?

A. No, because I still have nightmares about it.

Q. You still have nightmares?

A. Yes.

Q. Do you think that when Mr. Josephson had done these things, that from your observation of him, was he being intentionally mean toward you, or malicious, or was he out of his faculties? Was there any excuse you think he could have brought up for his behavior?

MR. SPENCER: Object. That's calling for speculation and there's a lack of foundation.

THE COURT: I sustain that.

Q. Did you learn whether or not Ms. Holder had gone to the Sheriff's Office after you had made complaints?

MR. SPENCER: Objection. That's lack of foundation, calling for hearsay.

THE COURT: Sustained.

Q. Did you learn whether or not Ms. Holder was asked any questions or participated in any way with regards to the complaints you made against Wayne Josephson?

MR. SPENCER: Objection. Same objection.

THE COURT: Sustained. Rather than starting out the question, "did you learn," I need to know the circumstances under which you may have learned because that leads me to fear that we're going to receive hearsay.

¶44 Another example of counsel's attempts to place inadmissible evidence before the jury, and refusal to heed a ruling of the court, occurred in an exchange between plaintiffs' counsel and witness Lela Holder, whom counsel was trying to paint as an accomplice of Josephson, at TR 187-188:

Q. Specifically the allegations contained in the general allegation that you had used your position to harm Mr. Lopez, or the specific allegations that you had contacted different agencies and had him audited, for instance you had contacted. . .

A. I never, ever did that. I told you numerous times, no.

Q. Did you use your fax machine in your court to prepare legal documents for Mr. Josephson?

A. I did not.

MR. SPENCER: Your Honor, I'm going to object, it's not relevant, it's beyond the scope, it's been asked and answered.

THE COURT: I sustain the objection. I think this is an attempt to get in false evidence through your questions when I think you know what the answer is going to be, and I'll sustain the objection. When I say - - let me say - - when I say false I don't mean to impugn Mr. Sisler, and I'll instruct you later that statements by the attorneys are not evidence. The only evidence comes in the form of answers given under oath by the witnesses. So a question itself doesn't contain any evidence for you, and that's my statement and I didn't mean to imply that Mr. Sisler was doing something wrong. But I am going to sustain the objection.

Q. Let me ask you a more specific question. You understand that you are under oath?

A. Yes I do, more than you probably.

Q. I see. Mrs. Holder, was the fax machine from your court, and the equipment in your court, to your knowledge, used to make legal documents for Wayne Josephson?

MR. SPENCER: Objection, not relevant.

THE COURT: Sustained.

¶45 The above are but a very few instances of misconduct on the part of plaintiffs' counsel. At some points in the transcript, one must go through several consecutive pages before finding one page upon which some objection to plaintiffs' counsel's questioning or tactics is not sustained. And the objectionable tactics did not end at the close of evidence. After repeated admonishments not to bolster or attempt to place inadmissible evidence before the jury, plaintiffs' counsel told the jury during his closing statement:

It's our job as attorneys to get you every piece of evidence that we think you can use in making your determination. Direct evidence . . . is the best type of evidence. Se cond best is the written recollections. The Judge and --- at times I have agreed that the statements have been sufficient, however, sometimes I thought that different pieces of evidence would assist you in your endeavors, and that's the reason that I had asked for the introduction of those things, those items.

MR. SPENCER: Your, Honor, I'm going to object, this is testifying and impermissible.

THE COURT: Sustained. Let's move on to the next thing.

TR. 293.

¶46 These and the other instances of misconduct all occurred during a short two-day trial. After a complete review of the trial transcript, we are convinced that these incidents as well as others, too numerous to duplicate here, constitute prejudicial attorney misconduct. While the District Court tried admirably to eliminate the prejudicial impact of this conduct with admonitions and curative instructions, we conclude that the misconduct pervaded the proceedings to such an extent that prejudice must be presumed. So many objectionable matters came before the jury that there is simply no human way the jurors could have been unaffected by the barrage, much less assimilate the admissible while rejecting the inadmissible evidence.

¶47 The granting of a new trial is appropriate where the misconduct of counsel prevents the opposing party from receiving a fair trial on the merits, even if there is substantial evidence to support the jury's verdict. *Durden,* ¶ 36. Here, there was substantial evidence to support the verdict. If true, plaintiffs' allegations concerning the defendant paint the portrait of a mean-spirited and assaultive individual.

¶48 However, we conclude that the pervasive misconduct of plaintiffs' counsel prevented the defendant from receiving a fair trial on the merits, and thus conclude that the District Court abused its discretion in denying Josephson's motion for a new trial on these grounds.

## ISSUE 6

¶49 **Whether the District Court committed reversible error when it did not grant**

**Josephson's motion for directed verdict against the Monroes?**

¶50 Because we reverse for the misconduct of counsel for the plaintiffs, we do not reach the question of whether the District Court erred when it did not grant Josephson's motion for a directed verdict.

## CONCLUSION

¶51 Judgment for the plaintiffs is reversed, and this matter is remanded for a new trial.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Chief Justice Karla M. Gray concurring in part and dissenting in part:

¶52 I join in the Court's opinion on issues one through four, but respectfully dissent from that opinion on issue five. Properly stated, that issue is whether the District Court manifestly abused its discretion in denying defendants' motion for a new trial on the grounds of plaintiffs' counsel's misconduct. The Court states the "manifest abuse of discretion" standard of review from *Armstrong*, and the concomitant requirement that the abuse of discretion be so significant as to materially affect the substantial rights of the complaining party from *Simmons Oil*; it does not, however, apply those standards. I would do so and affirm the District Court.

¶53 I could not agree more that plaintiffs' counsel's trial performance was far from ideal. Indeed, a reading of the entire record of the trial reflects that neither counsel for plaintiffs nor counsel for defendant covered himself in glory. The issue before us, however, is not

one of overall competence or trial performance. The issue is whether there was misconduct by plaintiffs' counsel so egregious as to require the District Court to grant the defendant's motion for a new trial based on that misconduct. I cannot conclude there was, or that any authorities on which the Court relies support its decision to reverse the District Court.

¶54 The Court begins its discussion of this issue with several references to "inadmissible" matters-that is, Josephson's claim that plaintiffs' counsel put inadmissible matters before the jury and the District Court's admonishments to counsel not to bolster with inadmissible evidence. As the District Court determined in denying the motion for a new trial, however, and as this Court implicitly concedes, no inadmissible evidence came before the jury. The District Court also determined that some improper inferences were created by plaintiffs' counsel's conduct, a proposition with which the Court-and I-agree. The jury was, as the trial court determined, cautioned not to base its verdict on anything but admitted evidence. In the view of the District Court, certainly in a much better position to evaluate such things than this Court, the jury heeded its admonitions. I simply cannot conclude that the lengthy recitation of objectionable questions asked by plaintiffs' counsel is a sufficient basis on which to reverse the District Court's denial of the new trial motion under our "manifest abuse of discretion" standard of review.

¶55 Nor do I believe that any of the authorities to which the Court cites support its determination to override the District Court's ruling and grant Josephson a new trial. *Eklund* is distinguishable on the facts, which involved repeated questions on cross-examination by the prosecution in a criminal case designed to place the defendant's character at issue in violation of Rule 404(b). We concluded the questions were gross misconduct and that- given the importance of credibility in the jury's consideration of the case-there was a reasonable possibility the misleading and inadmissible evidence denied the defendant a fair and impartial trial. *Eklund*, 264 Mont. at 429-30, 872 P.2d at 329. In the present case, no inadmissible evidence has been identified and it appears that this Court simply reviews a cold record and substitutes its judgment for that of the District Court which witnessed the entire trial.

¶56 *Durden*, also relied on by the Court, involved a district court *granting* a new trial on grounds that defense counsel's misconduct prejudiced the plaintiff's right to a fair hearing. We affirmed the district court, stating "[t]he trial judge is in the best position to determine the prejudicial effect of an attorney's conduct." *Durden*, ¶ 37. I would apply the same test here to the District Court's denial of defendant's motion for new trial based on plaintiffs'

counsel's misconduct and affirm. I also would apply another cardinal principle from *Durden*, ¶ 33, that a trial court's *denial* of a motion for new trial is granted greater deference than a ruling which effectively nullifies a jury verdict. That principle, too, mandates that we affirm the District Court in this case.

¶57 In sum, I agree there was misconduct by plaintiffs' counsel. In my view, it more likely aggravated the jury-since, as the Court's opinion makes clear, it resulted primarily in irrelevant and/or bolstering efforts-than rendered the jury more amenable to plaintiffs' position. I cannot understand how the Court can determine this particular misconduct was sufficient to *presume* prejudice and conclude the District Court manifestly abused its discretion by safeguarding the jury's verdict and denying the motion for new trial.

¶58 Since no cited authority supports the Court's decision here, I am concerned where this case will lead us. Where have our standards of review gone? Will we apply our own standards of competence in reviewing trial counsel's performance on a case-by-case basis even when no inadmissible evidence has resulted and no actual prejudice has been identified? Will we do the same in appeals by a losing party who claims his or her own counsel engaged in misconduct, thus requiring a new trial?

¶59 I cannot join the Court on issue five. To that extent, I dissent from the Court's opinion and would affirm the District Court on all issues.

/S/ KARLA M. GRAY