No. 04-853

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 322

POINT SERVICE CORPORATION, a Montana
nonprofit corporation,

        Plaintiff, Counterclaim Defendant
          and Respondent,

    v.

WILLIAM G. MYERS, JR.,

        Defendant, Counterclaimant,
          Third-Party Plaintiff and Appellant.

    v.

STEVE KAMERICK, et al.,

        Third-Party Defendants and Respondents.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause No. DV 99–12
                Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

       For Defendant/Counterclaimant/Third-Party Plaintiff/ Appellant William G. Myers, Jr.:

          James C. Bartlett, Attorney at Law, Kalispell, Montana

       For Plaintiff/Counterclaim Defendant/Respondent Point Service Corporation:

          Keith McCurdy, Attorney at Law, Polson, Montana

       For Third-Party Defendant/Respondent Steve Kamerick:

          Kristine J Beal, Timothy S. Peck; Phillips & Bohyer, P.C., Missoula, Montana

                         Submitted on Briefs:  September 6, 2005
                                   Decided:  December 20, 2005

Filed:

_____
                      Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Point Service Corporation (PSC) sued William G. Myers, Jr., to prevent him from maintaining various public and private nuisances and from renting his home in a subdivision for terms of less than 30 days.  Myers added a third-party claim to the action, accusing Steve Kamerick of battery.  After a bench trial, the Twentieth Judicial District Court, Lake County, granted injunctive relief against Myers and dismissed Myers' claim against Kamerick.  Myers appeals from certain portions of the judgment entered.  We affirm in part and reverse in part.

¶2     We address the following dispositive issues:

¶3     1.  Did the District Court err in concluding that PSC acted lawfully in enacting the fifth amendment to the restrictive covenants?

¶4     2. Are the District Court's findings concerning the altercation between Kamerick and Myers clearly erroneous, and are its conclusions incorrect?

Because we determine, under Issue 1, that the fifth amendment to the restrictive covenants is not valid and the District Court's judgment must be reversed in that regard, we need not address related issues Myers presents in the event we affirm on that issue.

¶5     We observe that the bulk of PSC's brief sets forth facts and arguments on what it calls its six "Issues."  To the extent these "Issues" seek review of matters distinct from those raised by Myers, we do not consider them because PSC did not file a cross-appeal in this

2

cause number. *See, e.g., Colmore v. Uninsured Employers' Fund*, 2005 MT 239, ¶ 39, 328 Mont. 441, ¶ 39, 121 P.3d 1007, ¶ 39 (citation omitted).

BACKGROUND

¶6    Myers purchased a home and lot in the Edmiston Point subdivision in Lake County, Montana, in 1990. Since then, he has advertised and rented his home to others for various periods of time, including week-to-week.

¶7    Edmiston Point property owners have adopted and filed restrictive covenants and, in 1968, also formed PSC, a non-profit corporation whose membership consists of all owners of property in the subdivision. PSC's articles of incorporation authorize it to enforce the restrictive covenants and to promulgate rules and regulations for the use of the common ground facilities in the subdivision.

¶8    PSC filed its original complaint in this action in February of 1999, alleging Myers' actions are in willful violation of the restrictive covenants' prohibition of use of lots "for any purpose other than single family residential use" and of PSC's rules for managing the common ground facilities, which do not allow persons who rent property in the subdivision for less than 30 days to use those facilities. PSC later amended the complaint by adding a count alleging Myers has maintained a nuisance at his property by playing loud music and placing an outdoor light so that it shines into the homes of his neighbors.

¶9    In June of 2001, PSC amended its complaint again, adding a claim that Myers' week-to-week rentals violate the fifth amendment to the restrictive covenants. The fifth amendment, dated June 1, 2000, modified the definition of single family "residential" use--

3

the only use allowed within the subdivision--to specifically exclude property rented for a term of less than 30 days. The fifth amendment also added a requirement that rental signs within the subdivision must state that a rental cannot be for fewer than 30 days.

¶10 During a five-day bench trial, PSC members testified and presented documentary evidence concerning the subdivision's restrictive covenants and PSC's regulations. A Realtor® testified that, in her expert opinion, rentals for less than 30 days changed the nature of the use of Myers' premises from residential to commercial, and would tend to lower the value of other homes in the neighborhood. Residents of a home adjacent to Myers' testified Myers' renters trespassed on their property, hung many towels on the porch railing of Myers' home, were noisy early in the morning and late at night, and parked too many vehicles outside Myers' house. The neighbors also testified they were bothered by light coming into their bedroom from Myers' mercury vapor yard light and by loud music he played while he was working outdoors on his property. Other subdivision residents testified Myers spit at them, set his lawn sprinkler so that it sprayed water on vehicles as they drove into the subdivision, gave "the one-finger salute" to several neighbors, and pulled down his pants and "mooned" one couple as they drove past his house.

¶11 During PSC's case-in-chief and over its objection that the issue had not been timely raised, Myers' counsel cross-examined PSC witnesses regarding details of the process by which the fifth amendment to the Edmiston Point restrictive covenants was adopted. Specifically, he questioned PSC's secretary and Edmiston Point residents as to the form in which title to their lots was held, who gave formal written approval to the fifth amendment

4

on behalf of their lots, and where and before whom that approval was given. The District Court, agreeing with PSC that Myers had not raised the issue in the pretrial order, admitted the evidence only "to preserve [Myers'] record on his offer of proof."

¶12 Regarding enforcement of the fifth amendment and other subdivision covenants and regulations, Myers testified, as did several other witnesses on his behalf, that the residents of Edmiston Point had unfairly singled him out as a violator. Myers also testified--with regard to his third-party claim--about an altercation he had with Steve Kamerick in September of 2000. Myers told the court that he was removing wheelbarrow loads of sticks and brush from his property and depositing them in a part of the common area where subdivision residents sometimes burned refuse. Myers testified that, after he returned to his property, Kamerick came onto the property and punched him in the face, injuring him. Myers also produced a witness who testified he observed the altercation and essentially supported Myers' version of the events.

¶13 Kamerick, in turn, presented a different version of the altercation. He testified he observed Myers dumping the sticks and brush in the common area. He believed Myers knew it was not the proper season for leaving brush piles there, picked up some of the sticks Myers had dumped and approached Myers, who by then had returned to his own property. Kamerick testified that, when he stepped onto Myers' property, Myers rushed toward him and he merely attempted to defuse the situation, unintentionally hitting Myers in the face with some of the sticks or his hand. Kamerick also produced evidence that Myers' witness

5

could not have seen the altercation because of trees between his stated point of observation and the location of the altercation.

¶14 The District Court entered extensive findings of fact and conclusions of law, including a conclusion that PSC acted lawfully in amending the covenants by enacting the fifth amendment. Ultimately, the court enjoined Myers from renting his property on Edmiston Point for periods of less than 30 days; from "encouraging his tenants to disregard the rules governing the use of the common ground facilities;" and from violating the subdivision's restrictive covenants and amended covenants. The trial court also enjoined Myers from continuing public and private nuisances--including playing loud continuous music, placing his lawn sprinkler so that it sprays passing vehicles, making "mono-digit obscene gestures" toward subdivision residents, using profanity, and spitting at and "mooning" neighbors. The court ordered Myers to immediately remove his mercury vapor light or relocate and shield it so that it shines only on his property, and dismissed Myers' battery claim against Kamerick with prejudice.

¶15 Myers appeals only from the District Court's injunction against his week-to-week rentals and from the dismissal of his claim against Kamerick.

ISSUE 1

¶16 Did the District Court err in concluding that PSC acted lawfully in enacting the fifth amendment to the restrictive covenants?

¶17 Myers offered evidence at trial that the fifth amendment to the restrictive covenants was not approved by a sufficient number of Edmiston Point lot owners because of a variety

6

of problems with some of the signatures; on this basis, he contended the fifth amendment was not properly enacted. PSC objected, contending the issue had not been raised by the pleadings or preserved by Myers' contentions in the pretrial order. The District Court ruled the issue had not been preserved in the pretrial order, but allowed Myers to present his evidence to "preserve his record on his offer of proof."

¶18 Myers asserts on appeal: (1) that he properly preserved the issue of the validity of the signatures approving the amendment in the pretrial order, and (2) that his offered proof that the amendment was improperly enacted renders it unenforceable. We review a ruling on whether offered evidence is within the scope of the issues presented in the pretrial order for abuse of discretion. *See Lopez v. Josephson*, 2001 MT 133, ¶¶ 14, 21, 305 Mont. 446, ¶¶ 14, 21, 30 P.3d 326, ¶¶ 14, 21. We review questions of law, such as whether the fifth amendment was properly enacted, to determine whether the trial court's conclusions are correct. *See*, *e.g.*, *Public Lands Access Ass'n, Inc. v. Jones*, 2004 MT 394, ¶ 27, 325 Mont. 236, ¶ 27, 104 P.3d 496, ¶ 27 (citation omitted).

¶19 A legal theory or factual issue for trial must be "at least implicitly included in the pretrial order;" however, pretrial orders should be liberally construed to permit any issues at trial that are "embraced within [their] language." *Plath v. Schonrock*, 2003 MT 21, ¶ 55, 314 Mont. 101, ¶ 55, 64 P.3d 984, ¶ 55; *Nentwig v. United Industry* (1992), 256 Mont. 134, 139, 845 P.2d 99, 102 (citation omitted). In the pretrial order in this case, PSC contended that the fifth amendment to the restrictive covenants prohibited Myers from renting his home for less than 30 days at a time. Myers responded by stating he denied all allegations by PSC

7

"except as may be stated herein" and that PSC "must be put to its proof." Myers also contended that covenants "must be reasonable and comply with due process of law, substantively and procedurally" and that the fifth amendment to the covenants was "arbitrary, unreasonable, capricious and denied [him] due process of law[.]" In addition, the pretrial order contains, as an "issue of law," the question of whether PSC acted lawfully in amending the restrictive covenants.

¶20 PSC provides no authority under which Myers was required to do more than he did to place the validity of the fifth amendment at issue at trial. The validity of the amendment was, at the very least, "implicitly included in the pretrial order." *See Plath*, ¶ 55. Moreover, the purpose of a pretrial order is to simplify the issues, permit counsel to prepare for trial and prevent unfair surprise. *See Lopez*, ¶ 18 (citation omitted). As to the surprise claimed by PSC, the record includes discussion regarding Myers' counsel's questioning of Edmiston Point residents during their depositions about the form/entities in which title to their Edmiston Point lots was held. This discussion substantially undermines PSC's claim that the issue was a surprise first raised at trial.

¶21 We conclude Myers adequately preserved for trial the issue of the validity of the fifth amendment to the restrictive covenants and, therefore, that the District Court abused its discretion in failing to admit Myers' evidence for consideration on the merits. In the usual case, a determination that a trial court abused its discretion in admitting or excluding evidence would result in a remand for further proceedings. *See, e.g., Mickelson v. Montana Rail Link, Inc.*, 2000 MT 111, ¶ 47, 299 Mont. 348, ¶ 47, 999 P.2d 985, ¶ 47; *Unmack v.*

8

*Deaconess Medical Center*, 1998 MT 262, ¶¶ 14, 17, 291 Mont. 280, ¶¶ 14, 17, 967 P.2d 783, ¶¶ 14, 17. In the present case, however, PSC does not request a remand in the event we reverse the District Court's evidentiary determination, instead choosing to stand or fall on its assertion that this issue was not adequately preserved for trial. Nor did PSC assert in the District Court that the evidence contained in Myers' offer of proof was incorrect. Therefore, under these unique circumstances, we address the merits of Myers' argument that the fifth amendment is invalid.

¶22 The Edmiston Point restrictive covenants expressly provide for their amendment only "by the recording of a written declaration of amendment executed by the owners of more than 65% of the lots and duly acknowledged." Myers contends the fifth amendment is invalid because the signatories to the amendment do not actually represent the owners of more than 65% of the 42 lots, or at least 28 lot owners. Although PSC claimed to have obtained consent to the fifth amendment from the owners of 32 lots, Myers challenged the signatures as to 18 of those lots.

¶23 Myers offered evidence at trial that individuals had signed as the owners of several lots in which title was actually held by a corporation or family trust. He elicited witnesses' admissions that Lots 9 and 10 were owned by the Roecks Family Trust, which did not sign; Lot 12 was owned by the Savall 1983 Trust, which did not sign; Lots 13 and 14 were owned by Woods Bay Properties, Ltd., which did not sign; Lot 21 was owned by the Eldridge Family Trust, which did not sign; and Lot 28 was owned by Stage Ridge, Inc., which did not sign. PSC produced nothing to indicate that the individuals who signed for those lots had

9

authority to sign on behalf of the respective trust or corporate owners of the lots. Myers also established that the signature of the owner of Lots 3, 4 and 5 was not acknowledged. In addition, he established that the signature for Lot 15 was for a general partnership and the signature for Lots 17, 18, 19 and 20 was for a corporation, but neither notarization was in the proper form for an acknowledgment in a representative capacity, as required by § 1-5-610(2), MCA. Finally, Myers established that the notarizations on the signature pages for Lots 24, 25 and 34 were signed in a county other than the county shown, showed an incorrect year or failed to show the state and county in which the signature was notarized.

¶24 Restrictive covenants must be strictly construed. *Bordas v. Virginia City Ranches Ass'n*, 2004 MT 342, ¶ 15, 324 Mont. 263, ¶ 15, 102 P.3d 1219, ¶ 15 (citation omitted). As a result, when covenants are amended so as to impose an impediment on use of property, we conclude the method prescribed for amending the covenants must be strictly followed. Myers established the prescribed method for amending the covenants was not strictly followed as to 18 of the 32 lot owners PSC claims authorized the fifth amendment, reducing the percentage of lot owners who actually authorized that amendment to well below the necessary 65%. For that reason, we hold that the District Court erred in concluding that PSC acted lawfully in enacting the fifth amendment to the Edmiston Point restrictive covenants.

¶25 We reverse the District Court's conclusion that PSC acted lawfully in amending the covenants by enacting the fifth amendment. As a result, we conclude the District Court erred in entering judgment that the fifth amendment prohibits Myers from renting his premises for

periods of less than 30 days and, on that basis, in enjoining him from renting the property for lesser periods of time.

ISSUE 2

¶26 Are the District Court's findings concerning the altercation between Kamerick and Myers clearly erroneous and are its conclusions incorrect?

¶27 A person is liable to another for battery if (a) the person acts intending to cause a harmful or offensive contact with another, or an imminent apprehension of such a contact, and (b) a harmful contact directly or indirectly results. *Collins v. State, Dept. of Justice, Div. of Highway Patrol* (1988), 232 Mont. 73, 80, 755 P.2d 1373, 1377 (adopting definition from RESTATEMENT (SECOND) OF TORTS). Here, the District Court found, among other things, that the confrontation between Myers and Kamerick was initiated when Myers rushed toward Kamerick, that Kamerick acted in self-defense and that no testimony was given and no evidence admitted which causally related Myers' "alleged jaw problems" to the altercation.

¶28 Myers specifically challenges the three District Court findings referenced immediately above. The first two findings--that the confrontation was initiated when Myers rushed toward Kamerick and that Kamerick acted in self-defense--are supported by Kamerick's testimony and are contradicted by Myers' testimony. It is for the trier of fact, and not this Court, to assess the credibility of witnesses and weigh the evidence; we will not second-guess a district court's determinations regarding the strength and weight of conflicting testimony. *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 210, 930 P.2d 37, 45-46

11

(citations omitted). We review findings of fact to determine whether they are clearly erroneous. *Wareing*, 280 Mont. at 202, 930 P.2d at 41. Here, the record establishes that the first two findings challenged by Myers are supported by substantial credible evidence and those findings are not otherwise clearly erroneous.

¶29 The third finding which Myers challenges accurately reflects the absence of any evidence in the record, other than Myers' own testimony, that the altercation caused him any jaw problems. It is true that Myers testified that he suffered from jaw problems which he said resulted from the altercation; to that extent, the District Court's finding is deficient. It is also true, however, that all of the court's other findings relating to the altercation accepted Kamerick's version of conflicting evidence. The District Court's wording of this finding--about Myers' "alleged jaw problems"--makes it clear the court did not find Myers' testimony about jaw problems resulting from the altercation credible. We will not second-guess a district court's determinations as to credibility. *See Wareing*, 280 Mont. at 210, 930 P.2d at 45-46. In any event, the trial court's findings that Myers initiated the altercation and Kamerick acted in self-defense rendered this finding irrelevant.

¶30 Finally, Myers challenges the following District Court conclusions of law regarding the confrontation between himself and Kamerick: that no acts or omissions by Kamerick constituted intentional or negligent torts; that Kamerick acted in self-defense; that Myers instigated, consented to, and voluntarily participated in the clash; and that Myers is not entitled to damages. Myers' challenges to these conclusions are based on the following legal theories: that, as a trespasser, Kamerick had a duty to leave the premises when requested to

12

do so; that Myers did not use sufficient force in evicting Kamerick from his premises to permit a self-defense claim by Kamerick; and that Kamerick cannot claim provocation because, as a trespasser, he is not entitled to assert self-defense against the use of nonlethal force to exclude him from the property.

¶31    We will not address an issue raised for the first time on appeal or a party's change in legal theory on appeal. *Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866 (citation omitted). Myers had ample opportunity to raise the legal theories set forth above in the District Court. He could have done so in his third-party complaint. He did not. He could have done so in the pretrial order. He did not. Because Myers waived these legal arguments by failing to raise them in the District Court, we do not address Myers' challenges to the District Court's conclusions of law.

¶32    Affirmed in part and reversed in part.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE