DA 10-0651

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 292

JAMES WYATT SLACK and JOSEPHINE L. SLACK,
individually and on behalf of their minor children,
S.S., L.S., and J.S.,

        Plaintiffs, Appellees and Cross-Appellants,

   v.

THE LANDMARK COMPANY, a Montana limited
liability company; MITZI GROVER,

        Defendants,

    and

LEWIS AND CLARK COUNTY,

        Defendant, Appellant, and Cross-Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. BDV 2008-178 Honorable Jeffrey M. Sherlock, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

           Steven R. Milch, Crowley Fleck PLLP, Billings, Montana
           Richard A. Larson, Attorney at Law, Helena, Montana

      For Appellee:

           Trevor L. Uffelman, Drake Law Firm, Helena, Montana

                        Submitted on Briefs:  September 28, 2011
                                   Decided:  November 22, 2011

Filed:

                      _____
                                  Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Defendant Lewis and Clark County (the "County") appeals from a jury verdict in the First Judicial District Court, Lewis and Clark County, finding the County negligent under § 75-10-1306(1), MCA, and awarding $563,592 in damages to Plaintiffs James and Josephine Slack ("Slacks"). The Slacks cross-appeal the District Court's denial of their motion for attorneys' fees. We affirm.

## BACKGROUND

¶2 On April 13, 2002, the Missouri River Drug Task Force ("MRDTF") busted a clandestine methamphetamine laboratory ("meth lab") in a home located at 1050 Mill Road in Helena, Montana. The MRDTF is a multi-jurisdictional drug task force, which includes members of the Lewis and Clark County Sheriff's Office. The operator of the meth lab was prosecuted by Lewis and Clark County and convicted.

¶3 In 2005, the Montana Legislature enacted §§ 75-10-1301 to -1306, MCA, a series of new laws regarding the cleanup of methamphetamine contaminated properties in Montana. The purpose of these new statutes was to "protect the public health, safety, and welfare by providing specific cleanup standards[.]" Section 75-10-1301, MCA. The Legislature found that "Innocent members of the public may be harmed when they are unknowingly exposed to [hazardous chemical] residues if the properties are not decontaminated prior to any subsequent rental, sale, or use of the properties." Section 75-10-1301, MCA.

¶4 The new laws established the following "reporting requirements":

> (1) *Whenever a state or local law enforcement agency becomes aware that an inhabitable property has been contaminated by its use as a clandestine*

2

*methamphetamine drug lab, the agency shall report the contamination to the department and to the local health officer*.

(2)  The department shall maintain a list of inhabitable property that has been reported as contaminated, and the list must be made available to the public through a website except as provided in subsection (3).

(3)  Upon confirmation by the department that an inhabitable property has been properly remediated to the standards established in 75-10-1303 or that the inhabitable property meets the decontamination standards without decontamination, the department shall remove the inhabitable property from the list required in subsection (2). The department shall provide written notification to the local health officer and the property owner of record when the documentation shows that the inhabitable property has been properly assessed or remediated.

(4)  The department may adopt rules establishing reasonable requirements for the sufficiency of documentation to be provided by a certified contractor.

(5)  Notwithstanding any other provision of law, once an inhabitable property has been removed from the list required in subsection (2), a property owner, landlord, or real estate agent is not required to report or otherwise disclose the past contamination.

Section 75-10-1306, MCA (emphasis added).[1]  The new statutes became effective on October 1, 2005.  The home at 1050 Mill Road was not listed as contaminated until sometime between August and November of 2007, when the County was contacted by the Department of Environmental Quality ("DEQ") regarding possible contamination at the site.

¶5     In late October 2005, the owner of 1050 Mill Road listed the home for sale with Mitzi Grover ("Grover"), who worked for The Landmark Company.  The Slacks entered into a buy-sell agreement to purchase the home on November 10, 2005.  Grover testified that she checked the DEQ's contaminated property list prior to closing, and the home at 1050 Mill

---

[1] The "department" in § 75-10-1301 to -1306, MCA, refers to the Department of Environmental Quality ("DEQ").  Section 75-10-1302, MCA.

3

Road was not on the list.  The sale closed and the Slacks, along with their two young daughters (their son was born later), moved into the home.

¶6	Approximately two years later, in November 2007, the Slacks were notified by the DEQ that, unbeknownst to them, their home had been the site of a meth lab and may be contaminated with methamphetamine.  The Slacks contacted a certified methamphetamine cleanup contractor and had their home tested.  The results of the testing showed that levels of methamphetamine in their home were hundreds of times higher than acceptable levels. Not only was the Slacks' home contaminated, but much of their personal property was also contaminated.  The Slacks were advised that their home was not safe to live in.  They moved immediately; abandoning their home and all their personal belongings, save for clothing, important paperwork, and family photos.

¶7	The Slacks were advised that to remediate their home, it would have to be "gutted." The cost to remediate, and then rebuild, their home was estimated at approximately $145,000 – more than the Slacks paid for it.  Ultimately, the Slacks defaulted on their mortgage and incurred more debt in purchasing new household items.

¶8	On February 21, 2008, the Slacks sued the County for failure to provide proper notice under § 75-10-1306(1), MCA, that the home at 1050 Mill Road was contaminated.  In the same complaint, the Slacks also sued both The Landmark Company and Grover.  In an amended complaint, the Slacks added an additional defendant, the prior owner of the home at 1050 Mill Road.  Ultimately, the Slacks settled with the prior owner and she was dismissed from the case.  The Slacks' claims against The Landmark Company, Grover, and the County proceeded to jury trial.

4

¶9　After a three day jury trial, the jury found that The Landmark Company and Grover were not liable under any claim asserted by the Slacks. The jury found that the County was negligent and awarded damages in the amount of $563,592 to the Slacks.

¶10　The County filed a motion for a new trial under M. R. Civ. P. 59(a), arguing that the District Court improperly instructed the jury by refusing to include the effective date of § 75-10-1306(1), MCA, in the jury instruction. The jury instruction in question, Instruction 20, read:

> Whenever a state or local law enforcement agency becomes aware that an inhabitable property has been contaminated by its use as a clandestine methamphetamine drug lab, the agency shall report the contamination to the Department of Environmental Quality and to the local health officer.
>
> If you find that Defendant Lewis and Clark County violated the above law, then Lewis and Clark County is negligent. You should then determine whether that negligence was a cause of the plaintiff's injury.

¶11　The District Court denied the County's motion for several reasons:

> This Court believes than an error of law would have resulted by inclusion of the effective date of the statute because the October 1, 2005 effective date was in evidence and thoroughly argued during the three-day trial. Therefore, inclusion of the effective date in the instruction would have been an unnecessary and improper comment on the evidence by the Court and would have given the jury the false impression that the County had no duty to report meth houses discovered prior to the effective date of the reporting statute [§ 75-10-1306(1), MCA]. [Citation omitted.] In addition, the county did not assert an affirmative defense as to its reporting duties for labs discovered prior to the effective date of the statute and presented no pretrial motion addressing that issue.

¶12　The Slacks filed a motion seeking attorneys' fees of $187,864 under § 25-10-711, MCA, which allows attorneys' fees against a governmental entity if the defense asserted by the entity was "frivolous or pursued in bad faith." The Slacks also included the attorneys'

5

fees in their bill of costs. The District Court denied the Slacks' motion for attorneys' fees, finding the County's defense was not frivolous or pursued in bad faith because no clear precedent existed regarding the County's reporting duties under the statute. The District Court further found that the County's failure to object to the Slacks' bill of costs did not waive its objection to Slacks' motion for attorneys' fees because the County timely filed its brief in opposition to the Slacks' motion for attorneys' fees.

¶13 The County raises several issues on appeal, the crux of which all culminate in the argument that it had no duty to report the home under § 75-10-1306(1), MCA. We affirm the District Court because we conclude that the County did not raise these issues below and thus they are waived on appeal. We affirm the District Court's ruling on the Slacks' motion for attorneys' fees.

## STANDARDS OF REVIEW

¶14 Issues presented for the first time on appeal will not be considered. *Point Service Corp. v. Myers*, 2005 MT 322, ¶ 31, 329 Mont. 502, 125 P.3d 1107.

¶15 We review the district court's decision to grant or deny attorneys' fees for an abuse of discretion. *Jones v. City of Billings*, 279 Mont. 341, 344-45, 927 P.2d 9, 11 (1996). A district court abuses its discretion when it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Larchick v. Diocese of Great Falls-Billings*, 2009 MT 175, ¶ 39, 350 Mont. 538, 208 P.3d 836.

## DISCUSSION

### 1. The County's Appeal

6

¶16 The County argues that the District Court erred, essentially, by allowing the case to proceed to trial because it owed no duty to the Slacks, either before (retroactively) or after October 1, 2005, under § 75-10-1306(1), MCA. The Slacks argue that the County cannot now claim error because at no time did the County do anything to raise these legal issues in the District Court. Thus, Slacks contend that the County has waived all the issues currently on appeal. We agree with the Slacks.

¶17 It is well established that the existence of a legal duty presents a question of law to be determined by the district court, not the jury. *Kakos v. Byram*, 88 Mont. 309, 317, 292 P. 909, 911 (1930); *Roy v. Neibauer*, 191 Mont. 224, 226, 623 P.2d 555, 556 (1981); *Ganz v. United States Cycling Federation*, 273 Mont. 360, 365, 903 P.2d 212, 215 (1995); *State of Montana v. Butte-Silver Bow County*, 2009 MT 414, ¶ 20, 353 Mont. 497, 220 P.3d 1115. The scope of a legal duty is also a question of law for the court to decide. *Fabich v. PPL Montana, LLC*, 2007 MT 258, ¶ 23, 339 Mont. 289, 170 P.3d 943.

¶18 The errors the County alleges on appeal are entirely its own making – it simply failed to adequately raise the issue of whether or not it owed a duty, and the scope of that duty, to the Slacks under § 75-10-1306(1), MCA. The County is absolutely correct in its brief on appeal – the issue of the existence and scope of a duty is for the district court to determine as a matter of law. However, the County did nothing to obtain a ruling on this purely legal issue.

¶19 To properly preserve the issues it now raises, the County should have filed a motion to dismiss or a motion for summary judgment. It did not. Instead, the County proceeded to trial, all the while knowing there was a legal issue for the District Court to determine. Not

only was the issue legal, it was dispositive of the Slacks' entire claim against the County. After all, if there is no duty, there is no negligence. *Sikorski v. Johnson*, 2006 MT 228, ¶ 13, 333 Mont. 434, 143 P.3d 161 ("Absent a duty, breach of duty cannot be established and a negligence action cannot be maintained").

¶20     At trial, the County did not make a motion for judgment as a matter of law. Instead, the County argued, via testimony of two witnesses, that it did not think the statute applied to meth labs discovered prior to October 1, 2005, nor was it was feasible to go through old files manually to search for meth labs discovered prior to October 1, 2005.

¶21     The County also proposed a jury instruction nearly identical to the given Instruction 20.  The only difference was that the County included the effective date of the statute.  Thus, it is reasonable to infer from the County's proposed instruction that the County apparently did owe some sort of duty after the effective date of the statute.

¶22     Given this record, we conclude the County failed to properly raise the issue of the existence and scope of the duty owed under § 75-10-1306(1), MCA.  It is true that the County's legal theory was raised in the pretrial order. *Plath v. Schonrock*, 2003 MT 21, ¶ 55, 314 Mont. 101, 64 P.3d 984 (failure to raise a legal theory or factual issue in a pretrial order can result in waiver).  However, that does not mean that the County could do nothing to advance its legal theory. *See LHC, Inc. v. Alvarez*, 2007 MT 123, ¶¶ 20-21, 337 Mont. 294, 160 P.3d 502 (general assertions in the pretrial order will not overcome failure to raise the issue in the pleadings or at trial.)  The County did not contest the facts of the case.  Despite there being essentially no factual issues, the County did nothing to seek a ruling on a purely

8

legal issue at any time during the course of the litigation. It is simply too late to seek that ruling now. *Point Service Corp.*, ¶ 31; *LHC, Inc.*, ¶ 20.

## II. The Slacks' Cross-appeal

¶23 The Slacks' cross-appeal argues that the District Court abused its discretion when it denied their motion for attorneys' fees for two reasons: 1) because the County's defense was frivolous and pursued in bad faith, and 2) because the County did not timely object to Slacks' bill of costs, which included attorneys' fees.

¶24 The County argues that its defense was "legally sound and bona fide," and that it timely objected to Slacks' motion for attorneys' fees, which was filed separately from the bill of costs.

¶25 We first address the Slacks' argument that because the County did not object to their bill of costs, which included $187,864 in attorneys' fees, the attorneys' fees should have automatically been awarded. It is well established that costs do not include attorneys' fees. *Weaver v. Advanced Refrigeration*, 2011 MT 174, ¶ 24, 361 Mont. 233, 257 P.3d 378. Simply including attorneys' fees in a bill of costs does not entitle a party to recover attorneys' fees. Indeed, § 25-10-501, MCA (regarding the procedure and time frame to file a bill of costs), does not apply to claims for attorneys' fees. *In re Estate of Lande*, 1999 MT 179, ¶¶ 13-15, 295 Mont. 277, 983 P.2d 316. The District Court did not abuse its discretion when it determined that the Slacks were not entitled to attorneys' fees under this theory.

¶26 Next, we turn to the Slacks' argument that they are entitled to attorneys' fees pursuant to § 25-10-711, MCA. That section provides:

9

(1) In any civil action brought by or against the state, a political subdivision, or an agency of the state or a political subdivision, the opposing party, whether plaintiff or defendant, is entitled to the costs enumerated in 25-10-201 and reasonable attorney fees as determined by the court if:

(a) the opposing party prevails against the state, political subdivision, or agency; and

(b) the court finds that the claim or defense of the state, political subdivision, or agency that brought or defended the action was frivolous or pursued in bad faith.

(2) Costs may be granted pursuant to subsection (1) notwithstanding any other provision of the law to the contrary.

Section 25-10-711, MCA.

¶27    A claim is frivolous or pursued in bad faith under § 25-10-711, MCA, when it is outside the bounds of legitimate argument on a substantial issue on which there is a bona fide difference of opinion. *Ostergren v. Department of Revenue*, 2004 MT 30, ¶ 23, 319 Mont. 405, 85 P.3d 738; *Jones*, 279 Mont. at 344, 927 P.2d at 11.

¶28    In the present case, the District Court found the County's defense was not frivolous or pursued in bad faith because there was no precedent that defined the scope of the County's duty to report under § 75-10-1306(1), MCA. It found the County legitimately contested the extent of its obligations under § 75-10-1306(1), MCA, and that the "failure to file a pretrial motion, admit liability, or attempt to settle the claim" was not done in bad faith. We agree. While it obviously would have been in the County's best interest to file some sort of pretrial motion in its defense, that failure does not mean that its defense was frivolous or pursued in bad faith. The County had a legitimate argument on a controlling question of law; it simply failed to raise it properly. That however, does not equate to a frivolous or bad faith defense. We affirm the District Court's denial of attorneys' fees under § 25-10-711, MCA.

## CONCLUSION

¶29    For the reasons stated above, we affirm the District Court.


/S/ MICHAEL E WHEAT


We Concur:


/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ BETH BAKER